(68 South. 221)

No. 20951.

STATE v. SEHON et al.

(Feb. 23, 1915. On Rehearing, April 26, 1915.)

*(Syllabus by the Court.)*

1. REFUSAL OF INSTRUCTION.

When, from the evidence in a criminal prosecution, the jury might reach a conclusion of fact favorable to the accused upon a certain issue presented, the trial judge should not charge the jury only according to his own conclusion upon the issue of fact presented by the evidence, and refuse to give a special charge, requested by the defendant, on the theory favorable to him.

On Rehearing.

2. CRIMINAL LAW ☞1111—APPEAL—CERTIFICATE OF TRIAL JUDGE—CONCLUSIVENESS.

Where the trial judge certified that there was *no* evidence to warrant a requested special instruction, and the bill of exception contained no recital of facts, or reference to evidence, the certificate of the trial judge will be accepted as conclusive.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2894–2896; Dec. Dig. ☞1111.]

3. CRIMINAL LAW ☞1110—APPEAL—STATEMENTS OF TRIAL JUDGE—MODIFICATION BY PROSECUTING OFFICER.

The prosecuting officer has no authority to modify, by admissions on appeal, statements of the trial judge attached to bills of exception.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2903–2917, 2919; Dec. Dig. ☞ 1110.]

4. CRIMINAL LAW ☞822 — INSTRUCTIONS — CONSTRUCTION AS A WHOLE.

The judge's charge to the jury must be considered as a whole, and particular expressions construed with reference to the context.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1990, 1991, 1994, 1995, 3158; Dec. Dig. ☞822.]

5. CRIMINAL LAW ☞807 — ARGUMENTATIVE INSTRUCTIONS—RESPONSIBILITY TO PUBLIC.

An objection that the charge is argumentative, or not applicable to the case, is without merit.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1805, 1959, 1960; Dec. Dig. ☞ 807.]

6. CRIMINAL LAW ☞1133—APPEAL—OBJECTIONS PRESENTED ON REHEARING.

Objections to the charge raised for the first time on a rehearing in the Supreme Court come too late.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2984; Dec. Dig. ☞1133.]

7. CRIMINAL LAW ☞834 — REQUESTED ABSTRACT INSTRUCTION—REFUSAL—MODIFICATION.

The trial judge has the right to refuse, or to modify, a special request to charge an abstract proposition of law, so as to make it applicable to the facts of the case.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2013, 2014; Dec. Dig. ☞834.]

O'Niell, J., dissenting, and Provosty, J., dissenting in part.

Appeal from Fourth Judicial District Court, Parish of Union; J. B. Holstead, Judge.

W. T. Sehon and others were convicted of manslaughter, and appeal. Affirmed on rehearing.

J. Burrough Crow, of Farmersville, Robert B. Dawkins, of Ruston, and Pat McNally, of El Dorado, Ark., for appellants. R. G. Pleasant, Atty. Gen. (H. B. Warren, Dist. Atty., of Ruston, and G. A. Gondran, of New Orleans, of counsel), for the State.

O'NIELL, J. The appellants, W. T. Sehon, Gordon Sehon, and Ernest Sehon, were indicted and tried for the crime of manslaughter; they were convicted and sentenced to imprisonment in the penitentiary for seven, five, and three years, respectively.

[1] They excepted to the refusal of the trial judge to give the following special charge to the jury, viz.:

"If, while two men are fighting, two others engage in a fight on the same spot and one of them kills the other, the two first are not responsible for the killing, provided they in no way aided or abetted the killing."

In his statement per curiam, the trial judge gave the following reason for refusing to give the requested charge, viz.:

"Because there was no evidence nor contention of counsel in argument before the jury to warrant such a charge. There was but one fight.

The old man, 75 years of age, went to the place unarmed, trying to prevent the fight, and he was not at fault at any time, not even when he was killed."

For the purpose of correcting an error in the foregoing statement, the following admission was signed by the district attorney and the attorneys for the defendants, and filed in the record, viz.:

"It is admitted that counsel for the defendants did contend before the jury in argument that the fight in which John Hodge was killed was separate from the one between W. T. Sehon and Sam Hodge, which had been prearranged between them."

In other words, it is admitted that there were two fights, one of which had been prearranged between the defendant W. T. Sehon and a man named Sam Hodge. The other was "the fight in which John Hodge was killed." And from the admission of the district attorney that the defendants' counsel argued to the jury that these two were separate fights, it is assumed that there was some evidence to justify the argument.

There might not have been error in the refusal to give the requested charge, except for certain instructions given by the judge in his general charge, bearing directly upon the issue presented in the statement of facts signed by the district attorney. For example, the judge gave the following requested charge:

"Since manslaughter is committed in the heat of passion, on sudden provocation, and a conspiracy is a combination of two or more persons to do an unlawful act, there can be no conspiracy in manslaughter."

To which he added.

"The above special charge is true in a general sense, but I charge you that a conspiracy can be formed by two or more persons to enter into a fight with another person or persons, and that the crime of manslaughter may be committed in the execution of the conspiracy or by previous agreement or understanding to enter into the fight."

This charge was based upon the assumption that the fight in which John Hodge was killed was "the one between W. T. Sehon and Sam Hodge which had been prearranged between them." And the defendants were entitled to have the jury instructed on the other hypothesis; that is, if they should find that the fight which had been prearranged between W. T. Sehon and Sam Hodge had nothing to do with "the fight in which John Hodge was killed."

Another expression in the general charge which, in our opinion, made it very important for the judge to give also the requested charge, was this:

"An unqualified plea of self-defense admits the killing. A plea of self-defense means: 'Yes, I did the killing, but I did it in self-defense.' A plea of self-defense may be restricted so as to apply to only one or more of the defendants when there are several on trial, or the plea may be qualified so as to admit the blow struck or shot fired, but deny that it was the cause of the death."

Self-defense is not a special plea. When several persons are prosecuted for the commission of a homicide on the theory of the state that they were aiding one another or carrying out a conspiracy, any one of them may rely upon the plea of self-defense without admitting that he did the killing or that he aided therein or was a party to a conspiracy. He may contend that the one who did the killing acted in self-defense and, at the same time, contend that, in any event, he did not aid in it and was not a conspirator therein.

There might have been no harm in this portion of the general charge if the judge had given the special charge requested, which the facts admitted by the district attorney rendered very pertinent and necessary.

Another portion of the general charge which, in our opinion, made it very important to the defense for the judge to give the special charge requested was this:

"When two men agree to fight, and do fight, and one of them kills the other in the fight, the slayer would be guilty of manslaughter even though he did not intend to kill, and this would be equally true as to others [who], knowing all the conditions, joined in the fight, [or were]

present aiding and abetting the slayer or aiding the one who shot or struck the fatal blow.

"And when two men agree to fight, and do fight, according to agreement, and when others, knowing of the agreement to fight, are present, aiding and abetting by words or acts, some on one side and some on the other side of the combat, and one of the persons fighting or one of those present aiding and abetting therein, with knowledge of the agreement to fight, kills one of the persons fighting on the other side, or kills one of the persons aiding and abetting on the other side, he would be guilty of manslaughter, or [if] the person killed was not taking any part in the fight, a mere bystander, and the killing was the direct result of the fight and the use of deadly weapons in the fight, the killing would be manslaughter.

"When two men agree to fight and one or more other persons enters into the agreement tacitly or expressly, with a common purpose to take part in the fight or to be present to aid and abet the one side or the other directly or indirectly, and the fight comes on, all who are present fighting or present aiding and abetting are guilty of violating the law, and responsible under the law for the deeds committed on their side of the fight, and this is equally true as to the deeds committed on the other side of the combat by those on that side. Under such circumstances, neither party can claim exemption from the killing on the ground of self-defense."

There are other portions of the general charge bearing directly upon the judge's theory that there was but one fight between two factions or families. And he instructed the jury to hold all the combatants on either side responsible for what was done, by any one on their side of the combat.

The defendants were entitled to have the jury instructed as to what their verdict should be if they concluded that the fight between W. T. Sehon and Sam Hodge—and the participants in that fight—had nothing to do with the killing of John Hodge.

The refusal to give the requested charge was prejudicial to the defendants who were engaged in the fight between W. T. Sehon and Sam Hodge if they were not in the difficulty in which John Hodge was killed. But, as it does not appear that any one of the defendants admitted that he killed John Hodge, and as the record does not disclose that any one of them was engaged in the fight or difficulty in which John Hodge was killed, we must set aside the verdict and sentence against all of them.

For the reasons assigned, the verdict and sentence are annulled and set aside, and the case is remanded to the district court for a new trial.

## On Rehearing.

LAND, J. Bill of exception No. 2 is predicated on no evidence, alleged to have been adduced on the trial of the case, and the judge certified "that there was no evidence * * * to warrant such a charge." Hence, on the face of the record, the judge properly refused to charge the jury on an abstract proposition of law.

The admission of counsel on both sides, filed in this court, relates solely to the *contention* of counsel for the defendants before the jury. Eliminating the negation of such a contention from the reasons of the trial judge, his per curiam stands as stated supra.

[2, 3] The evidence adduced on the trial was not taken down, and there was no agreed statement of facts. The bill of exception contains no statement that evidence of any kind was adduced, and the judge certifies that the requested charge was based on no evidence whatever.

In a recent case, this court held that the recitals in a bill of exception as to the testimony offered are controlled by the statement per curiam attached to the bill. State v. Gainey, 135 La. 459, 65 South. 609; State v. Cavido, 134 La. 294, 64 South. 117. A fortiori, where a bill contains no recital as to evidence offered, the statement per curiam is necessarily conclusive.

The district attorney protests that his admission covers only the fact of contention, and we agree with him in that construction, but we have not been cited to any rule of practice which authorizes prosecuting attorneys to alter or modify statements by the court attached to bills of exceptions. In

STATE v. SEHON

the case at bar, the statement of the trial judge must be taken as true.

Bill No. 6 was not urged by counsel for the accused on the former trial, but on the rehearing has been argued by them with much earnestness. The bill comes before us in a questionable shape, as the trial judge refused to sign the bill as prepared, and recasted it so as to read as follows:

"Be it remembered that at the close of the charge to the jury defendants objected to the charge on the subject what *proof* was; the court in substance having charged," etc.

The objection made to the charge was in the following words, by defendant's counsel:

"Defendants through counsel object to the charge as a whole, and object particularly *to* that part of the charge which commented upon the duties of jury as being argumentative."

[4] The charge of the trial judge is voluminous, but he seems to have taken special pains to instruct the jury that the burden is on the state to prove every essential element of the offense, every necessary fact, and the guilt of each of the defendants, beyond a reasonable doubt.

The judge stated to the jury:

"You draw your conclusions as to what the law is from the whole charge, just as you do what the facts are from the whole evidence of the case."

[5] On the subject-matter of "proof," the judge said:

"Proof is not a mysterious something. When from the evidence the mind is fully satisfied, from the evidence, of the truth of the charge, that is proof. It is an intelligent, conscientious, satisfactory belief, from the evidence, beyond a reasonable doubt."

The concluding sentence makes it plain that the judge, in his charge, used the term "proof" in the sense of conviction or belief beyond a reasonable doubt. We are not prepared to say that such a charge is erroneous, or was calculated to mislead the jury.

The objection to that part of the charge relating to the duties of the jury *as argumentative* is without merit. The judge may

properly inculcate upon the jurors a sense of their high responsibility to the public as well as the accused. State v. Obregon, 10 La. Ann. 799.

[6] The defendants have on this rehearing for the *first time* raised other objections to the charge of the court. These belated objections challenging the legal accuracy of certain isolated expressions in the general charge come too late. This court has held that objections submitted to the trial court cannot be enlarged on a rehearing in the Supreme Court. State v. Barrett, 117 La. 1094, 42 South. 513.

Bills Nos. 1 and 3 are without merit, as the special instructions requested were covered by the general charge.

Bill No. 4 recites an objection to general charge "because it did not correctly set forth the laws as applicable to the case." Such an objection is too vague and indefinite for consideration. Marr's La. Crim. Jur. p. 799.

[7] Bill No. 5 was taken to an addendum made by the judge to a special instruction requested by counsel for the defendants, who requested the following special charge:

"Since manslaughter is committed in the heat of passion or sudden provocation, and conspiracy is a *combination of two or more persons to do an unlawful act*, there can be no conspiracy in manslaughter."

After giving the said special instruction, the judge said to the jury:

"The above special charge is true in a general sense, but I charge you that a conspiracy can be formed by two or more persons to enter into a fight with another person or persons, and the crime of manslaughter may be committed in the execution of the conspiracy, or by previous agreement or understanding to enter into the fight."

Counsel for defendants objected to the above modification of the special instruction; and the judge assigned reasons for his ruling as follows:

"The facts were such that the special charge had to be refused or else the qualification complained of given. The question of conspiracy

was an incident, the evidence offered by the state to show that all three of the defendants had expressly or tacitly entered into an agreement to meet another or other persons the next morning and fight."

As copied into the record some word (probably "to") was omitted from the statement of the reasons given by the judge. The requested charge was an abstract proposition of law, which required modification in order to make it applicable to the case on trial. We agree with the trial judge that the crime of manslaughter may be committed under the facts and circumstances stated by him.

Bill No. 7 was taken to the action of the court in overruling defendants' motion for a new trial, on the special ground that one of the jurors was taken ill during the trial, and was thereby rendered incapable of properly understanding and appreciating either the evidence or argument of counsel. The trial judge declined to sign the bill as presented by counsel for the defendants, but corrected the statements therein so as to correspond to the facts.

The per curiam shows that the juror, at the point where the closing argument for the defendants was about to begin, was taken with a chill; that by consent of counsel, the coroner administered a dose of medicine to the juror; that the court ordered the argument suspended for an hour, and the jury retired, and on their return the juror in question stated that he was able to go on, and appeared fully recovered; that argument was resumed, continued, and closed without limitation as to time; that no objection was made by defendants and no bill reserved. We see no error in the ruling of the judge.

It is therefore ordered that our former decree in this case be vacated, and it is now ordered that the verdict and sentence below be affirmed.

O'NIELL, J., dissents for the reasons assigned in the original opinion.

PROVOSTY, J., concurs in the decree, but dissents from the proposition that the district attorney cannot, by an admission, control the per curiam of the trial judge.