(83 South. 264)

No. 23705.

STATE v. SMITH.

(Nov. 3, 1919.)

*(Syllabus by Editorial Staff.)*

1. GRAND JURY ⊜═6 — EXEMPTIONS DO NOT DISQUALIFY.

Under Act No. 135 of 1898, as amended by Act No. 58 of 1904, Act No. 113 of 1912, Act No. 182 of 1914, as amended by Act No. 122 of 1916, as amended by Act No. 113 of 1918, and Act No. 18 of 1906, Act No. 23 of 1908, and Act No. 66 of 1914, court had no right, on its own motion, to discharge prospective grand jurors as disqualified because exempt under Act No. 135 of 1898, § 2, since veniremen's right to exemption under such statute does not disqualify them, but merely entitles them to exemption if they themselves see fit to claim it.

2. GRAND JURY ⊜═11—DISCHARGE OF JURORS; OTHER CAUSES.

Act No. 135 of 1898, § 1, giving court discretion to decide upon the competency of jurors where from physical infirmity or relationship or from ignorance of the English language, or "other causes," the person may be, in the opinion of the judge, incompetent to sit upon the trial of any particular case, did not authorize court to discharge venireman upon ground that he is postmaster, or special deputy sheriff, or secretary of board of trustees of hospital for insane, or member of school board, or not a registered voter.

3. GRAND JURY ⊜═11—STATUTE AS TO DISQUALIFICATION APPLICABLE TO PETIT JURORS ONLY.

Discretion given court by Act No. 135 of 1898, § 1, to decide upon competency of jurors in particular cases where from physical infirmity or relationship or from ignorance of the English language and inability to understand the same when read or spoken, or other causes, the person may be, in the opinion of the judge, incompetent to sit upon the trial of any particular case, has reference to petit and not grand jurors.

4. GRAND JURY ⊜═11—MEMBER NOT REMOVABLE BY COURT EXCEPT FOR CAUSE SUBSEQUENTLY ACCRUING.

When a competent male citizen is once drawn in the manner provided by law, as a grand juror, he becomes thereby irrevocably a member of the jury, and the judge is powerless to remove him except for legal cause subsequently accruing.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

James Smith was convicted of rape, and he appeals. Reversed, and motion to quash indictment sustained.

Hakenyos, Hunter & Scott and Blackman, Overton & Dawkins, all of Alexandria, for appellant.

A. V. Coco, Atty. Gen., T. A. Carter, Dist. Atty., of Alexandria (T. S. Walmsley, of New Orleans, of counsel), for the State.

DAWKINS, J. Defendant appeals from a conviction and sentence to life imprisonment on a charge of rape. Eighteen bills of exception appear in the record.

Bill of exceptions No. 1 was retained to the overruling by the lower court of a motion to quash the bill of indictment on the ground that the grand jury by which it was returned was illegally constituted. The facts surrounding the drawing and impaneling of the said grand jury were as follows:

On the day that the jury was to be impaneled, all of the twenty men selected and summoned for that purpose appeared and answered to their names, save one. From among the nineteen thus appearing, the court selected and appointed one Sam Lisso to serve as foreman, and who thereupon took his seat in the jury box as such. Having been directed by the lower judge to draw eleven additional names to complete the panel, the sheriff emptied the cards bearing the names of the remaining individuals, who had been drawn for jury duty, into a box and proceeded to draw therefrom the names of three other persons, who likewise took their seats in the jury box. At this point, the judge discovered that the cards were not being drawn from the envelope in which they had been placed by the jury commissioners, labeled "Grand Jurors," and directed the sheriff to put all of them back into the envelope, save that of Sam Lisso, selected as foreman as aforesaid, and to proceed with the drawing of the jury anew, which was done, until eleven men, in addition to the foreman, had taken their seats. The judge then proceeded to examine all of said individuals, including Lisso, with respect to their qualifications, with the result that the following were discharged from the jury by the court, of its own motion, and without their having claimed any exemption, for the causes mentioned, to wit:

(1) Sam Lisso, first chosen foreman, because he was postmaster at Glemora, La., and in whose stead one Joe Williams was called to the jury box, and, after taking his seat, was by the court designated as foreman, in lieu of Lisso.

(2) W. C. Beall, because he was found not to be a registered voter of Rapides parish, though apparently possessing all other qualifications.

(3) J. W. Smith, because he was found to be a member of the Lecompte school board.

(4) W. F. Bethune, because he was a special deputy sheriff.

(5) Felix Melder, because he was also a special deputy sheriff.

(6) C. F. Crockett, because he was secretary of the board of trustees of the Louisiana hospital for the insane at Pineville, La.

Of course, six additional names were drawn to replace those so excused or discharged, and leaving only one of the nineteen men who appeared for service on the grand jury uncalled.

Defendant also urged, as a ground for quashing the indictment, that one Rufus Smith, who actually served on the said grand jury, was not legally qualified to act, in that he was not a bona fide male resident and citizen of the state of Louisiana.

We will now proceed to dispose of the motion to quash, for, if it be good, then a consideration of the other bills of exception will become unnecessary.

The law governing the qualifications of jurors (grand and petit) is found in section 1, Act 135 of 1898, p. 216, as follows:

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, that the qualifications of a juror to serve in any of the courts of this state shall be as follows:

"To be a citizen of the United States and of this state, a bona fide male resident of the parish in and for which the court is holden, for one year next preceding such service not under interdiction or charged with any crime or offense nor convicted at any time of any crime or offense punishable by hard labor, unless he has been pardoned, and to be a competent and intelligent person of full age having capacity to serve as a juror, to try and determine both civil and criminal cases, provided that there shall be no distinction made on account of race, color or previous condition; and provided further, that the judges of the district courts shall have discretion to decide upon the competency of jurors in particular cases where from physical infirmity or from relationship or from ignorance of the English language and inability to understand the same when read or spoken, or other causes, the person may be, in the opinion of the judge, incompetent to sit upon the trial

of any particular case. In addition to the foregoing qualifications, a grand juror shall be able to read and write the English language and be a person of well known good character and standing in the community."

Section 2 of the same act provides the exemptions from jury service, which are personal to those so called, as follows:

"Sec. 2. Be it further enacted, etc., that the following persons shall be exempt from serving as grand or petit jurors, but the exemption shall be personal to them and when they do not themselves claim the exemption, it shall not be sufficient cause for challenging any person exempt under the provisions of this act, viz.:

"First. The members, the officers and the clerks of the General Assembly, during the session of the Legislature, and in going to and returning from the same.

"Second. The Governor, Lieutenant Governor, State Auditor, State Treasurer, Secretary of State, Superintendent of Public Education, their clerks and employés and all public officers commissioned under authority of the United States.

"Third. Judges and officers of the several courts of this state, members of the police jury, attorneys at law, ministers of the gospel and physicians actually engaged in the practice of their profession, professors and school teachers, * * * apothecaries and notaries and all members of paid fire departments.

"Fourth. All persons over sixty (60) years of age, those who from sickness or other physical infirmity may be incapacitated from rendering such service, and those who have served as grand jurors under the provisions of this act during the period of six (6) months, and those who have served as petit jurors as herein provided, who shall not again be called as jurors until after the expiration of one year from the date of their service.

"Fifth. All telegraph and telephone operators actually employed as such and agents representing them at various stations. Also chief engineers of electric, waterworks, ice plants and sugar factories while actually engaged in the performance of their duties."

Since the passage of the Act No. 135 of 1898, there have been amendments thereto, and other legislation in respect to juries and jurors, as follows:

Act No. 58 of 1904, amending section 4 of said act, dealing with the manner of drawing and selecting grand and petit jurors by the jury commission of each parish outside of Orleans.

Act No. 18 of 1906, exempting commercial travelers from jury duty.

Act No. 23 of 1908, requiring the impaneling of grand juries outside of the parish of Orleans at least twice a year (except as to the parish of Cameron).

Act No. 113 of 1912, amending section 12 of Act 135 of 1898, with reference to compelling the attendance of jurors and their compensation.

Act No. 66 of 1914, exempting undertakers from jury service.

Act No. 182 of 1914, amending section 11 of the act of 1898, with respect to the drawing of tales jurors.

Act No. 122 of 1916, amending the last-mentioned act of 1914.

Act No. 113 of 1918, amending the act last mentioned on the subject of tales jurors.

[1-3] It will thus be seen that, while the grounds upon which Lisso (postmaster) and Bethune and Melder (deputy sheriffs) were discharged afforded them exemptions from jury service if they had seen fit to claim the benefit thereof, still this did not disqualify them, and no one else had the right to raise the issue. Clearly, the grounds upon which the other three veniremen were dismissed were neither good as exemptions, if claimed, nor sufficient to disqualify them from jury service. The only discretion allowed the court in excusing prospective jurors from service, is that found in the proviso or concluding clause of the first sentence of section 1 of Act No. 135 of 1898, above quoted, "where from physical infirmity or from relationship or from ignorance of the English language and inability to understand the same when read or spoken, or other causes, the person may be, in the opinion of the judge, incompetent to sit upon the trial of any particular case." We hardly think that

any one would contend that the phrase, "or other causes," used in the apparently restricted sense in which it is used in this proviso, could be stretched to include the grounds upon which the various veniremen were dismissed in this case, especially since, as to those who had exemptions, if claimed, the law in positive terms declares that "it shall not be sufficient for challenging" them; and, as to the remaining three, there is nothing to show that they were either mentally, morally, or physically incompetent. Besides, the proviso in which a certain discretion is left to the judge clearly has reference to petit jurors and their competency "to sit upon the trial of any particular case."

[4] As was pointed out by counsel for defendant in oral argument, the law has provided a particular method for the selection of grand juries, some features of which allow a limited discretion to the officers charged with that duty, and in other respects the scheme involves a certain element of chance or lottery, in which it seems to have been intended that no one should have the absolute right to name the whole personnel of those who shall sit upon that body. In the first place, the jury commission is given the discretion to select 300 names qualified to serve as jurors to be deposited in the box provided for that purpose, and from the names so chosen they select 20 citizens possessing the qualifications provided in section 1 of the Act 135 of 1898, to be taken from different portions of the parish as far as practicable, who are subject to duty as grand jurors for six months. In impaneling the grand jury, the judge is allowed to select and appoint the foreman, but the remaining 11 members are required to be drawn by the sheriff from the envelope containing the names of the 20 persons selected and placed therein by the jury commission. To this extent, it is a matter of chance as to who among the 19 remaining names in the envelope shall be drawn to supply the additional 11 jurors. Those not drawn are required to be deposited in a box and kept subject to call, in event of any member of the grand jury becoming disqualified for any cause, and in which case the judge again has the discretion of selecting the name of a person from among them to supply the vacancy. In these circumstances, if the judge be allowed to excuse or discharge one member of the jury so drawn without good cause (and by this is meant a legal cause), then he may excuse any number (6 having been excused in the present case), and thereby choose a grand jury of his own liking. Such a course is not contemplated by the law, and, when a competent male citizen is once drawn in the manner provided by law as a grand juror, he becomes thereby irrevocably a member of the jury, and the judge is powerless to remove him, except for legal causes subsequently accruing. State v. Mc-Garrity, 140 La. 444, 73 South. 259, and authorities there cited.

It follows that six of the twelve men who sat on the grand jury which returned the indictment in the present case were not lawful members thereof, and its proceedings were therefore invalid.

We find it unnecessary to consider the other questions raised on the record.

For the reasons assigned, the judgment and verdict appealed from is annulled and reversed, and the motion to quash is hereby sustained.