(87 South. 294)

No. 24202.

**STATE v. BAY.**

(Nov. 3, 1920.  On Rehearing, Jan. 31, 1921.)

*(Syllabus by the Court.)*

1. **Criminal law ⟨key⟩814(8, 9), 1172(6) — Instruction as to authorization of appropriation unnecessary where no evidence thereof, but giving not prejudicial.**

   Where, in a prosecution for embezzlement, no evidence is offered tending to show an accounting or agreement between the defendant and the person or corporation whose money was appropriated, whether before or after the appropriation, whereby such appropriation was authorized, the trial judge is not required to give the jury any instruction predicated upon the theory that there might have been such accounting or agreement. But if in such case the judge instructs the jury that, if they find that defendant appropriated the funds of such person or corporation to his own use, "without in any way at that time" accounting to the owner, the transaction would be illegal, the fact that the instruction was not required does not render it prejudicial to the defendant.

2. **Indictment and information ⟨key⟩33(3)—Indictment not bearing signature of foreman of grand jury as such invalid.**

   So far as we are informed, this court has uniformly held that no indictment can be valid which does not bear the signature of the fore-

man of the grand jury as such, and we find no sufficient reason for establishing a precedent at variance with that jurisprudence.

*(Additional Syllabus by Editorial Staff.)*

3. **Grand jury ⟨key⟩11—Judge may excuse members for reasons not disqualifying or exempting them from service.**

   In a prosecution for embezzlement, it was not error, in view of Act No. 135 of 1898, for the judge to excuse from service on the grand jury two of the twenty men whose names were drawn by jury commission on the ground that the mother of one of them had recently died, and that his father was in very bad health, and that the other was a saw filer in a large sawmill, the operation of which would suspend if he were drawn for service, notwithstanding that neither of such reasons would have been cause for disqualification or for exemption.

4. **Embezzlement ⟨key⟩42—False entries after embezzlement to cover up shortage held admissible.**

   In a prosecution of a cashier for embezzlement, it was not error to admit evidence that defendant had made false entries in the books after the embezzlement to cover up his shortage.

   Provosty, J., dissenting in part.

Appeal from Thirtieth Judicial District Court, Parish of La Salle; F. E. Jones, Judge.

Calvin Bay convicted of embezzlement, and he appeals. Conviction and sentence annulled, and defendant remanded.

Thornton, Gist & Richey, of Alexandria, and Winfree & Weslow, of Houston, Tex., for appellant.

A. V. Coco, Atty. Gen., and C. W. Flowers, Dist. Atty., of Jena (T. Semmes Walmsley, of New Orleans, of counsel), for the State.

O'NIELL, J.  Appellant was convicted of the crime of embezzlement and sentenced to imprisonment in the state penitentiary. The record contains five bills of exception and an assignment of errors.

[3] Bill No. 1 was reserved to the overruling of the motion to quash the indictment.

The complaint was that the judge had, without good reason, excused from service on the grand jury two of the twenty men whose names were drawn by the jury commission. The record contains an admission that the names of the two grand jurors who were excused by the judge were drawn for service during the impaneling of the grand jury, and that the two men would therefore have served on the grand jury if they had not been already excused from service. It appears that the members of the local bar consented to the judge's excusing the two men from service on the grand jury; but it also appears that the defendant in this case was not represented by any member of the local bar. The reason given for excusing one of the men from service on the grand jury was that his mother had recently died, and that his father, with whom he lived, was in very bad health. The reason given for excusing the other man was that he was a saw filer in a large sawmill, the operation of which would have been suspended if the man had been drawn for service on the grand jury. It is conceded that neither of the causes for which the judge excused the men from service on the grand jury would have been cause for disqualification or for claiming exemption from service. But the statute on the subject of impaneling or drawing grand juries does not forbid the district judge to excuse a man from service on the grand jury for a cause which would not disqualify him or give him the absolute right to claim exemption. Section 1 of Act No. 135 of 1898, p. 216, declares that the judge shall have discretion to decide upon the competency of jurors in particular cases, and to declare the person incompetent for jury service in any particular case when, from physical infirmity or relationship or inability to understand the English language, or for any other cause, such person may be, in the opinion of the judge, incompetent. It is true

that expression appears in the paragraph referring particularly to the qualifications of petit jurors; but the concluding sentence of the paragraph shows plainly that the provision also applies to the question of the competency of a person to serve as a member of a grand jury; for the concluding sentence declares that, in addition to the foregoing qualifications, a grand juror shall have the further qualifications of being able to read and write the English language and be a person of well-known good character and standing in the community. Section 2 of the statute enumerates the causes for which a person may claim exemption from service on either a grand or petit jury. But it does not follow, merely because the statute fixes the disqualifications and enumerates the causes for which a person may claim exemption from service on a grand or petit jury, that therefore the judge of the district court cannot excuse a person for any cause that would neither disqualify nor exempt him from jury service.

Counsel for appellant cite and rely upon the ruling in State v. McGarrity, 140 La. 436, 73 South. 259, and the ruling in State v. Smith, 145 La. 1091, 83 South. 264, in support of their motion to quash the indictment in this case. The decision in the McGarrity Case is not appropriate. In that case, after the court had appointed a foreman of the grand jury and the sheriff had drawn one of the eleven names to be drawn to complete the grand jury, the judge, without good reason, ordered the sheriff to return the name to the envelope and draw another. The result was that the man whose name was first drawn for service did not serve on the grand jury. In that way the court substituted another person for the one whose name had been regularly drawn for service.

In the case of State v. Smith, after the foreman had been appointed and the eleven other grand jurors had been impaneled, the

judge, of his own motion and without good cause, discharged six members of the grand jury and had six other names drawn from only seven names that remained in the box. None of the six grand jurors who were discharged had asked to be excused from service.

Of course, a district judge is not permitted to select a grand jury by the process of elimination. He has authority to appoint the foreman, but the eleven other grand jurors must be drawn by the sheriff, without discrimination, from the number of names remaining in the envelope. It might be deemed wrong, therefore, for the judge to excuse from service, whether with or without good cause, so many of the twenty persons whose names were selected by the jury commission as to eliminate the element of chance and make the impaneling of the grand jury a matter of selection or choice of the district judge. But that is not the case before us. There is no pretense on the part of appellant that there was any fraud or wrongdoing in the excusing of the two men from service on the grand jury; nor is it pretended that defendant was in any way injured or prejudiced by the judge's having excused the two men from service. A person accused of crime has the right to insist that no incompetent person shall be a member of the grand jury that investigates his case; but he has no right to have any particular one of the competent persons drawn for service. Our conclusion is that the ruling on the motion to quash the indictment was correct.

[4] Bill of exceptions No. 2 was reserved to the overruling of defendant's objection to certain evidence offered by the state to prove that false entries were made by defendant in the books of the bank of which he was cashier, on two occasions subsequent to the date of the alleged embezzlement. The evidence showed that on the day after the alleged offense defendant remitted $165.75 to another bank, and made an entry on the books of the bank of which he was cashier, showing that he had remitted $10,165.75. The evidence further showed that 18 days after the alleged offense defendant made a flat raise of $10,000 in the balance due to his bank by the other bank. In his instructions to the jury the judge restricted the evidence to the purpose for which it was offered by the state; that is, to show, as far as it might, that the defendant was covering up shortages in his accounts in the books of the bank of which he was cashier. It is true, the evidence tended to show that defendant was covering up a shortage of $20,000; that is, a much larger amount than he was charged with having embezzled in this case. But it also appears that there were other indictments pending charging that defendant had embezzled other sums from the bank. The defense in this case was that, although defendant had caused to be remitted a cashier's check in payment of a debt for which he had given his personal check, he had not had any intention of committing a crime or of defrauding the bank. The main question before the jury, therefore, was whether there was a criminal intent on the part of the defendant in the transaction for which he was indicted. The evidence tending to show that he subsequently undertook to cover up the shortage was relevant to the question at issue before the jury. As a general rule, in a prosecution for crime, proof that the defendant committed another and similar crime is not admissible for the purpose of showing a probability that he committed the crime for which he is on trial. That is because proof of the commission of one crime does not, of itself, give rise to a presumption that the perpetrator committed another and similar crime. The reason for the rule is, not alone that proof that the defendant committed another crime might have a prejudicial effect upon the mind of the jury, but also

that the defendant in the prosecution is not supposed to be prepared to defend himself against any other accusation than that which is contained in the indictment. But the mere fact that proof of the defendant's having committed another crime may have a prejudicial effect upon the mind of the jury, or the fact that the defendant may not be altogether prepared to counteract evidence of his having committed another crime, does not make such evidence inadmissible, if it be clearly relevant to any question at issue before the jury, pertaining to the defendant's guilt or innocence of the crime for which he is on trial. In the case before us the evidence that defendant had made entries in the bank's books, indicating an intention to cover up a shortage in his accounts, was in the nature of proof of an acknowledgment of having committed the crime charged in the indictment. The evidence was therefore admissible.

Bill of exceptions No. 3 was reserved to a portion of the judge's charge to the jury. That part of the charge which was objected to is copied in the bill thus:

"Gentlemen of the jury, if you find from the evidence that the accused was cashier of the Citizens' Bank, and that while he was cashier he drew a check against his individual account in the Citizens' Bank in favor of the Rapides Bank & Trust Company for $2,516.67, and paid or caused to be paid the said check out of the funds belonging to the said Citizens' Bank without in any way at the time accounting to the Citizens' Bank for same, the transaction would be illegal and unlawful."

In the statement per curiam the judge gives his version or recollection of the charge, in which it appears that the expression "without in any way at *the* time accounting to the Citizens' Bank" is written "without in any way at *any* time accounting," etc. The judge, however, refers us to the charge as originally written and delivered by him, which is copied in full in the transcript; and there the charge appears even more objectionable than it appears as copied by defendant's attorneys in the bill of exceptions; for the expression, instead of being "without in any way at *the* time accounting to the Citizens' Bank," is written "without in any way at *that* time accounting to the Citizens' Bank." The charge, therefore, was not an accurate statement of the legal proposition. The facts on which the indictment was founded were these: Defendant had remitted to the Rapides Bank & Trust Company, at Alexandria, his personal check on the bank of which he was cashier for $2,516.67 to pay his personal obligation, for which he had pledged to the Rapides Bank his stock in the bank of which he was cashier. When the check came back for collection there was an insufficiency of funds to pay the same. Defendant therefore had a remittance made by a check of the bank itself, or cashier's check. Under those circumstances it was not a correct instruction to charge the jury that the defendant would be guilty of embezzlement if he had paid his personal check with funds belonging to the Citizens' Bank (of which he was cashier) without *at that time* accounting to the Citizens' Bank for the same; for he might have been innocent of any crime if he had accounted to the bank at some previous time. We assume, from the statement per curiam, and particularly from the judge's version or recollection of the charge, that he concedes that the charge as read and recorded was an improper one. For this reason the verdict and sentence will have to be annulled and the case remanded.

Bills No. 4 and No. 5 relate to rulings upon defendant's motion for a new trial, which we see no reason for reviewing.

In the assignment of errors defendant alleges that he was not present in court during

all of the proceedings had in this case, and particularly during the taking of evidence on the motion for a new trial, and at the time when the motion was overruled, and when sentence was pronounced. The minutes of the court do not show affirmatively that defendant was present in court during those proceedings. Therefore, if the verdict could otherwise be sustained, we would be compelled to remand the case for the purpose of showing whether defendant was actually present in court when the sentence was pronounced, and to correct the minutes in that respect.

The verdict and sentence appealed from are annulled, and it is now ordered that this case be remanded to the district court for a new trial.

PROVOSTY, J., dissents.

DAWKINS, J., concurs in the decree.

## On Rehearing.

MONROE, C. J. The conviction herein was set aside upon the ground, specifically stated, that the trial judge had erred in a certain portion of his instructions to the jury, to which it was added that, in any event, it would be necessary to remand the case for further information upon the question whether the defendant was present in court when the sentence was pronounced.

[1] The charge in the indictment (reduced to simpler terms) is that defendant willfully and feloniously appropriated to his own use $2,516.67 belonging to the Citizens' Bank, of which he was cashier, the modus operandi being that he drew his personal check on the Citizens' Bank in favor of the Rapides Bank & Trust Company, and, when the check was presented for payment, paid it with a cashier's check against the funds of the Citizens' Bank on deposit in the Rapides Bank. and then destroyed the check thus paid, without charging it to his own or any other account in the Citizens' Bank, "thereby embezzling the funds of the Citizens' Bank," to the extent of the amount stated.

The trial judge instructed the jury in regard to the law applicable to the crime of embezzlement in general, and with reference to the embezzlement charged as follows (quoting in part):

"Embezzlement is the fraudulent appropriation of the property of another by the person to whom it is intrusted. The appropriation must be made with a fraudulent intent, as the intent imparts to the act the character of an offense. By criminal intent the law means an intent to do an act forbidden by law, and an act is willfully done when done without reasonable belief it was lawful. Whether the intent was fraudulent or not must be determined from all the facts of the case. An intent to do an act forbidden, without reasonable belief it is lawful, is the intent required to convict. An intent to appropriate at the time of the appropriation must have existed to constitute the crime of embezzlement. The fraudulent appropriation is to be inferred from facts; for illustration, such as the denial of the reception, or suppression of facts of such reception; false accounts, or falsification of accounts, by the party charged; his refusal to account, or his concealment of the funds intrusted to him.

"Under section 907 of the Revised Statutes of Louisiana, under which act the accused is indicted, the actual custody of the money of the bank need not be shown to have been in charge of the accused officer to make out the charge for which the accused is indicted.

"To warrant conviction in this case, it is necessary that the state prove to your satisfaction every essential and material allegation or charge in the indictment.

"Gentlemen of the jury, if you find, from the evidence that the accused was cashier of the Citizens' Bank, and that, while he was cashier, he drew a check, against his individual account on the Citizens' Bank in favor of the Rapides Bank & Trust Company for $2,516.67, and paid, or caused to be paid, the said check out of funds belonging to said Citizens' Bank without in any way at that time accounting to the Citizens' Bank for same, the transaction would be illegal and unlawful.

"If you find from the evidence that the accused embezzled or wrongfully converted to

his own use money belonging to the Citizens' Bank or on deposit there, but that the intention of the accused at the time of the conversion of the money was to restore it at some future date, the act would not be relieved of its criminal nature, and the act would be unlawful; and, notwithstanding the accused's intention to restore the money at some future date, he would be guilty of the charge of embezzlement."

Defendant excepted to so much of the charge as is included in the paragraph beginning with "Gentlemen of the jury" and ending with "unlawful" on the ground "that the same was not a correct exposition of the law; that it was, in effect, a comment upon the evidence and a direction of a verdict," which objection having been overruled, the bill was reserved.

In the opinion heretofore handed down by the court it is said, inter alia:

"It was not a correct instruction to charge the jury that the defendant would be guilty of embezzlement if he had paid his personal check with funds belonging to the Citizens' Bank (of which he was cashier) without at that time accounting to the Citizens' Bank for the same; for he might have been innocent of any crime if he had accounted to the bank at some previous time."

Neither the bill of exception nor the record indicates that any offer was made by defendant of evidence tending to show an accounting by him, whether before or after the event, with respect to his appropriation of the money of the bank; and it is well settled that "a judge is not required to instruct a jury upon a theory of a case which finds no support in the evidence." State v. Matthews, 111 La. 962, 36 South. 48; State v. Anderson, 120 La. 335, 45 South. 267; State v. Sehon, 137 La. 83, 68 South. 221. Not only does it not appear that such evidence was offered; but the theory of the defense, as propounded in the latest brief filed in this court by defendant's counsel, in effect concedes that no evidence of that character could have been offered, as it would not have been consistent with their theory or the facts. Counsel say that they pointed out to the trial judge the portion of the charge to which they objected, and stated their objection, which, in the absence of anything to the contrary, we take to have been the same as that now urged, and which, as we read the brief, amounts to this, that where one who has the money of another under his control appropriates it with the intention of using it for his own purposes, and so uses it, but with the intention also from the beginning of refunding it upon obtaining the necessary amount from a source upon which he relies, the intention to appropriate and use is controlled by the intention to refund, and the transaction becomes a loan, which is merely a misdemeanor, punishable by fine, under Act 193 of 1910, amended by Act 221 of 1916, notwithstanding that the money is appropriated and used without the knowledge or consent of the owner. The statutes mentioned deal with the matter of borrowing by officers of corporations, and where there is a borrower there must be a lender; hence one who merely appropriates the property of another in his possession without the consent or knowledge of the owner is not a borrower, and the statutes referred to are not applicable to him.

After making the statement in regard to their objection to which we have above referred, the learned counsel proceed (in their brief) as follows:

"We have not the charge before us at this time, but we remember there was a paragraph in the charge immediately following the paragraph objected to wherein the judge charged the jury that, where an officer of a bank appropriates money belonging to the bank to his own use, the mere fact that he intended, at some future time, to replace it, would not relieve the offense of its criminal nature, but he would still be guilty of the crime of embezzlement.

"We submit that, when these two paragraphs are taken together, they absolutely deprive the defendant of the perfectly legitimate defense which he made in the case. It was tantamount to, and, in effect, charging the jury that, even if they should find that the defendant gave the check, honestly expecting to have the money to take it up when it came in, with funds which he expected to realize from the sale of the stock, and that, even though he held the check as a cash item and did take up the check with the stock, after the bank was closed, still he was guilty of the crime of embezzlement, a felony, when, under the law, * * * the worst he could have been guilty of was a misdemeanor, and this notwithstanding that the court had previously charged that 'intent' was a necessary element of the crime."

The statement thus quoted is leveled at two paragraphs of the judge's charge, taken together, to one of which the counsel objected on the trial, and to the other of which no objection was made. To the paragraph that was objected to, the statement appears to us to have little or no application; and, as to the other, it ignores the facts that no objection was made thereto, and that the paragraph deals with the case of an accomplished embezzlement, and, in effect, instructs the jury that one cannot embezzle (i. e., intend to appropriate, and appropriate, the property of another to his own use) and escape the commission of the crime by at the same time intending to return or reimburse it at some later date; and it also ignores this court's lack of information concerning the facts to which the statement refers and its lack of jurisdiction to determine, even were it better informed, whether such facts have been established.

Our reconsideration of the case, therefore, leads to the conclusion that, in the absence of any evidence tending to show that defendant accounted to the bank for his appropriation of its money, whether at that time or previously, and in view of the defense relied on, the trial judge was not required to instruct the jury upon the theory that such accounting might have been made, and that the instruction as given could not have operated to defendant's prejudice.

We find no reason for changing our ruling on the bills Nos. 1 and 2, and, in view of the opinion that we have reached in regard to one of the points presented by the assignment of errors, we find no necessity for passing upon the bills 4 and 5.

It is, however, assigned as error that the record discloses no legal indictment, in that the instrument copied therein and purporting to be a bill of indictment does not bear the signature of the foreman of the grand jury, and that it (the record) fails to show that defendant was arraigned, or that he was present in court, when the sentence was pronounced. The record shows that defendant was arraigned, but it also shows that the indictment was not signed by the foreman of the grand jury, and it does not show that defendant was present in court when sentenced.

It appears by weight of authority in this country, that it is unnecessary, in the absence of a statute requiring it, that the indictment should be signed either by all of the grand jurors or by the foreman of the grand jury. In some jurisdictions the signature of the foreman is required by statute and is essential to the validity of the indictment; and in others, though so required, the omission of the signature is not fatal. 22 Cyc. 251. We know of no statute of this state requiring the signature of the foreman of the grand jury, or of any one, to an indictment; but, although we have found no case in which the precise issue has been presented, it has several times been conceded by this court that, to be valid, an indictment must be signed by the foreman of the grand jury. In State v. Duncan, 8 Rob. 562, the question was whether an indictment was val-

id where the words "a true bill" and "foreman" were indorsed on it by some one other than the foreman, and it was held that those words might be indorsed on the bill by any person, under the direction of the grand jury; that "it is only necessary that the finding should be signed by the foreman, and it is not pretended that this formality was not observed," etc.

In State v. Morrison, 30 La. Ann. 817, it was held (quoting the syllabus) that:

"No indictment is valid which does not contain an indorsement of the special crime charged, followed by the words 'a true bill,' and signed by the foreman of the grand jury in his official capacity."

In State v. Logan, 104 La. 254, 28 South. 912, the court, after differentiating the case of State v. Mason, 32 La. Ann. 1018, categorically affirmed the ruling in State v. Morrison.

[2] In State v. Wilson, 126 La. 664, 52 South. 981, the ruling in both of the cited cases was, in effect, approved, and the case of State v. Mason was again differentiated. So far as we are informed, it has never been held by this court that an indictment can be valid which does not bear the signature of the foreman of the grand jury, as such, and we find no sufficient reason for establishing a precedent at variance with that jurisprudence. Our conclusion then is that the record fails to disclose a valid indictment.

It is therefore ordered that the decree heretofore entered in this case be set aside; that the conviction and sentence appealed from be annulled; and that the defendant be detained to await the further action of the district court and until discharged in due course of law.

O'NIELL, J., concurs in the decree.