## DELAND MINING AND MILLING COMPANY *vs.* ROBERT N. HANNA ET AL.

*Entries in Account Books Made by Party to the Cause—Sale of Goods by Sample—Inferior Goods Delivered— Evidence—Instructions.*

In an action by a firm to recover the price of goods sold entries in an account book made by one of the partners are not admissible in evidence.

When defendant ordered soapstone of a certain quality to be shipped to a third party by the plaintiff, in an action to recover the price, evidence is admissible to show that the goods as delivered were inferior to those ordered; that the plaintiff

agreed that defendant might make an arrangement with the third party by which he would keep the goods after making a reduction in the price, and that soapstone of a higher quality might be mixed with the inferior at a reduction in the price thereof made for that purpose.

When money has been loaned to a member of a firm, evidence is admissible to show whether it was the understanding of the parties that the money was loaned to the firm or to the individual partner who obtained it.

In an action to recover the price of goods which were sold by sample a prayer is erroneous which declares that the plaintiff is entitled to recover the price without requiring the jury to find that the goods delivered were equal to the sample.

The buyer, in an action against him for the price of goods sold, is not entitled to have the jury instructed that an allowance should be made to him for the return of empty bags which had contained the goods, when there is no evidence in the case that any bags had been returned to the seller.

When the only evidence in the case is to the effect that the difference between the price of goods of the quality ordered and the price of goods of an inferior quality which were delivered was a certain sum, a prayer allowing the jury to deduct a larger sum from the seller's claim is erroneous.

*Decided February 24th, 1910.*

Appeal from the Circuit Court for Baltimore County (BURKE, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, THOMAS, PATTISON and URNER, JJ.

*Joseph N. Ulman* (with whom were *Harman, Knapp and Tucker* on the brief), for the appellant.

*Jacob France* (with whom was *John M. Little* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

This case originated in a non-resident attachment proceeding, instituted by the appellees, Robert N. Hanna and Charles A. Williams, trading as the Eastern Mineral Company, against the appellant, The Deland Mining and Milling Company, to recover an amount alleged to be owing by the appellant to the appellees, for three car loads, sixty tons, of soapstone sold unto the appellant company, and upon its order shipped to the Ford Manufacturing Company of Vandalia, Illinois, with a charge therein for six hundred bags, in which the soapstone was shipped, at ten cents per bag.

The writ of attachment was sued out of the Circuit Court for Cecil County and placed in the hands of the sheriff of that county, who attached certain property of the appellant, and made his return thereto accordingly.

The appellant thereafter filed its bond, as provided by statute, and through its attorney, entered its appearance to the suit, whereupon the attachment was dissolved.

Upon suggestion of the appellant, the case was removed to the Circuit Court for Baltimore County for trial. The appellant pleaded to the short note or declaration, consisting only of the common counts, by filing the pleas of (1) never promised as alleged, (2) never indebted as alleged and (3) set-off, and with these pleas filed the following bill or account against the appellees:

### STATEMENT.

BALTIMORE, April 21st, 1909.

Eastern Mineral Company,

To Deland Mining and Milling Company.    Dr.

To this amount of cash paid you in June, 1906, to be
credited on general account and not so credited..... $ 50.00
1907—
June.    To this amount of allowance made to Ford Mfg.
Co., Vandalia, Ill., to induce them to accept inferior
goods shipped in violation of your agreement....... 124.00

To this amount, being the difference between market value of 1 carload of superior soapstone and price at which we were compelled to sell said carload to Ford Mfg. Co. as a further inducement to them to accept inferior goods shipped by you to them in May and June, 1907.................................... 80.00

To value of 800 bags returned to you by Ford Mfg Co. and not credited............................ 80.00

                                                    $334.00

The case was tried before a jury, and resulted in a verdict for the plaintiff for the sum of two hundred and eighty-nine dollars and fifty-one cents ($289.51) upon which verdict a judgment was entered for that sum.

At the trial of the case there were eight bills of exception reserved by the appellant; seven relate to the rulings upon the admissibility of evidence and one to the ruling upon the prayers.

The plaintiffs (appellees) offered the testimony of Robert N. Hanna, who testified that he was a member of the plaintiff firm, that his partner was Charles A. Williams; that he did not know where Williams was, had been absent from the city since December 1st, 1907, (about eighteen months); that the firm ceased to do business in June of that year; that the plaintiffs had business dealings with the defendant beginning in October or November, 1906, when they commenced selling Hilton J. Doggett at that time; that after that Doggett organized the defendant company; that on the 25th day of May, 1907, the plaintiff received an order from the defendant for three carloads of goods to be shipped to the Ford Manufacturing Company, of Vandalia, Illinois. The order was in these words:

ORDER.

May 25th, 1907.

Eastern Mineral Company,

Baltimore, Md.

Gentlemen:—

Please ship in our name consigned to the Ford Manufacturing Company, Vandalia, Ill., as soon as possible three (3) carloads of your No. 100 fine Powdered Soapstone, and let us have the invoices and Bills of Lading for same at the earliest possible moment so we can put a tracer on these cars and hurry them forward to this Company. They are in urgent need of these cars, and will want two or three cars a month in addition to these three cars, provided we can serve them satisfactorily.

The price, terms and conditions of this order are the same as heretofore. Please advise when you will be able to get these cars off so we can advise the Ford Mfg. Co., and oblige.

He further testified that the goods were shipped pursuant to order; that he was familiar with the books of the plaintiff which were identified by him, and that the entries in them were made by Williams, his co-partner. The plaintiff then offered to prove by the witness the entries in the order book, so kept by his co-partner Williams, to which the appellant objected. Whereupon the witness was asked: Q. Were they made by you? A. No, sir. Q. At your direction? A. I saw them made, the date they were made. Q. Who made them? A. Mr. Williams. Q. Do you know whether or not they are correct, A. Yes, sir; they are correct and correspond with the order. Q. Your partner is out of the State and you do not know where he is? A. No, sir. The Court thereupon overruled the exception and the entries in the book were admitted in evidence. To this ruling of the Court the appellant excepted, and this constitutes the first bill of exception.

This was an offer to prove by the witness, the entries in the book of the plaintiffs, made by Williams, one of the plaintiffs, who was said to be at the time out of the State, and was evidently made for the purpose of proving the sale of the

goods to the appellant, and their delivery to it, by the ship-
ment of same to the Ford Manufacturing Company, as di-
rected by the appellant.

In the case of *Romer* v. *Jaecksch,* 39 Md. 587, the plain-
tiff, to prove the sale and delivery of the goods charged, was
called as a witness and produced a book, called the "order
book" of the firm, which contained entries made by Campen,
his deceased partner, charging the defendant with merchan-
dise sued for in that case. The witness testified that "when-
ever Campen sold flour for the firm, he, Campen, was in the
habit of entering the same upon an order book kept by the
firm, and that the firm always engaged to deliver the flour
that it sold, and also that he knew it to be the custom of
Campen to make such entries in the course of business, at the
time the flour left the store of the firm, in its wagons, on the
way to the place of delivery. The order book contained en-
tries of sales corresponding with those set forth in the ac-
count filed with the declaration, and also entries of payment
for sales which the witness testified were in the hand writing
of Campen." The defendant objected to the admission of
these entries as evidence, but the lower Court overruled the
exception and allowed the same to be read to the jury for the
purpose of establishing the sale and delivery of the goods
charged in the account. This Court, upon appeal, held that
the entries were not admissible in evidence and in delivering
the opinion of the Court, CHIEF JUSTICE BARTOL said that:
"In this State the rule of the common law has not been de-
parted from, and it has been held to apply only to entries
made by a clerk, or other disinterested party; here the entries
in question are those made by the deceased partner, a party
to the transaction, having a direct interest in the subject-
matter, and, therefore, not within the rule." This Court in
the case of *Gill* v. *Staylor,* 93 Md. 467, speaking through
JUDGE PEARCE, said: "It is of course clear, both upon princi-
ple and authority that entries made by a party himself charg-
ing another, are not admissible as evidence *per se.* Such en-
tries stand upon a different footing from those made by a

clerk or other person in the ordinary course of business and contemporaneously with the transaction." The case of *Romer* v. *Jaecksch, supra,* was approved by this Court in *Stallings* v. *Gottschalk,* 77 Md. 429. And the cases cited by the appellees in their brief are not at all in conflict with these cases.

Upon the authorities above cited, it seems clear to us that the entries in the book of the plaintiffs were inadmissible, and that the Court below erred in admitting this testimony.

2nd. In the course of the trial Hilton J. Doggett, president of the Deland Mining and Milling Company, was called as a witness by the defendant company and testified that the plaintiffs manufactured several grades of soapstone, one called No. 80 and another No. 100 and a third called F. F. F., that samples of these different grades were furnished him, from time to time as needed, by the plaintiffs, but only No. 80 and No. 100 grades interested him. That samples of these, as well as samples of a higher grade of soapstone manufactured by the defendant company, and called Talc, to distinguish it from the common soapstone, were sent to the Ford Manufacturing Company of Vandalia, Ill. That after correspondence with the Ford Company the defendant company received orders, both for talc and soapstone of the No. 100 grade. The orders for soapstone, three in number, were each for one carload, containing twenty tons, and were dated respectively, April 24th, May 11th and May 20th, 1907. That upon the receipt of these orders he wrote the letter heretofore given, dated May 25th, 1907, to the Eastern Mineral Company, the plaintiffs, directing that company to ship these goods, No. 100 grade, to the Ford Manufacturing Company, Vandalia, Ill. That the soapstone was sold by sample furnished by the plaintiffs to the defendant company and which it in turn forwarded to the Ford Company.

The witness further testified that after receiving complaint from the Ford Company that the soapstone shipped by the plaintiffs was not up to samples, he took up this contention with Williams, one of the plaintiffs, who said he regretted it, but stated "that he realized the situation, and that it would

not pay to bring the goods back from Vandalia to the mills at an expense of over $4.00 per ton when the original value was only $3.25, and told the witness to go ahead with the Ford Manufacturing Company and see if he could not arrange some way to keep the goods; that if witness was compelled to make any deduction or allowance to the Ford Manufacturing Company, Williams would credit him with these deductions or allowances. That he took the matter up with the Ford Manufacturing Company." The witness was then asked: "Mr. Doggett I want to explain to the Court and jury if there is any difference between talc dust and soapstone, the No. 100 grade such as you bought from the plaintiffs in this case?" The plaintiffs objected to this question. The Court sustained the objection and the witness was not permitted to answer the question, whereupon the defendant excepted, and this constitutes the second bill of exceptions.

3rd. The witness was thereafter asked: "Now, Mr. Doggett, come back to your story as we were progressing when the Court adjourned on Thursday, I understood you to say, you had taken up with Mr. Williams, the matter of objections made by the Ford Manufacturing Company to these three carloads of soapstone. Now I want you to tell his Honor and the gentlemen of the jury what conversation or understanding you had with Mr. Williams as a member of the plaintiff firm in regard to these three cars of soapstone?"

"Well, we understood I was to take the matter up with the Ford Manufacturing Company and try and adjust it with them and any allowance I had to make the Ford Company, why Mr. Williams would allow me from his bill, so I proceeded to take the matter up with the Ford Company on those lines and finally arranged with the Ford Company to keep the goods at a reduction, I think it was $2.00 a ton." How many tons? "There was 60 odd tons in the lot, that made $120.00, and there was some little discrepancies in the weight of the cars and on that account we had to make a further reduction of $4.00, bringing the allowance up to $124.00 (and it was also necessary to allow the Ford Company to

keep a carload of talc, which I had sold them, which was a superior grade of soapstone, at a reduction of $2.00 per ton to mix with this inferior soapstone in order to bring it up to a quality they could use in their business and at a price they could afford to pay; that made a further reduction of $40.).'' The plaintiffs objected to that portion of the answer embraced within the parenthesis, and moved that the same be stricken out, which motion the Court granted and the defendant excepted thereto, and this constitutes the third bill of exceptions.

4th. The witness further testified that he discussed fully with the plaintiff Williams, the contention of the Ford Company and that it was agreed between Williams, representing the plaintiffs, and Doggett, representing the defendant company, that rather than bring the goods back to Maryland, it would be better to make the allowance of $2.00 per ton. The witness was then asked: "Then you made an allowance on the talc, you say," "Yes, sir; we also made an allowance of $2.00 per ton on a car of talc I shipped them to mix with the soapstone; I told Mr. Williams we not only would have to make an allowance on this inferior soapstone but I would have to make an allowance on the car of talc, that is to put it to them at a very low price to mix with the soapstone and would have to reduce my price $2.00 per ton and he said to go ahead and fix things up the best you can and that is what I done." "What was the grade of talc worth on the market?" This question was objected to by the plaintiffs and the objection was sustained by the Court and witness was not permitted to answer the question, the defendant excepted and this constitutes the fourth bill of exception.

The second, third and fourth bills of exception may be considered together. The appellant in its defense to this suit contends that it should be allowed as against the plaintiffs' claim: 1st. The amount of reduction made by it in the price of soapstone, sold by the appellant company and shipped by the appellees, upon the order of the appellants, to the Ford Manufacturing Company of Vandalia, Ill. And

secondly, for the amount of reduction in price of talc sold and delivered by the appellant to the Ford Company. The appellant company alleging that these reductions were authorized and directed by the appellees, with the understanding between them that such reduction would be allowed the appellant company as credits upon the soapstone bought by appellants from appellees. And that these reductions were made necessary because of the inferior quality of the soapstone purchased by the appellant from the appellees and by the latter shipped to the Ford Company, the same being inferior to the sample by which it was purchased; and that to enable the Ford Company to use this inferior soapstone it was required to purchase a higher grade of soapstone to mix with it.

It was for this purpose, as it is alleged, that the carload of talc, was purchased and used by the Ford Company. Therefore evidence tending to show that the talc so bought for that purpose was soapstone of a higher grade than that with which it was to be mixed, should have been admitted, as it in a measure supports the contention of the appellant.

The appellant, however, was not in any way injured by the ruling of the Court below, in not permitting these questions to be answered, inasmuch as this witness, as well as the witness Ford, was permitted without objection, to testify to the facts which were sought to be elicited by these questions.

5th. The witness Doggett after further testifying that his dealings with the Eastern Mineral Company had been principally with Mr. Williams, was then asked: "In December, 1907, Mr. Hanna testified he had a conversation with you on the street in which he referred to his co-partner as being a damned rascal and he said there was some check transaction spoken of at that time; tell the gentlemen of the jury what that check transaction was?" "Why I told Mr. Hanna about a check that Mr. Williams got from me for $50.00."

Following this answer in the record, is a copy of a check drawn by Hilton J. Doggett, General Manager, to Charles A. Williams, upon the National Exchange Bank of Baltimore for the sum of fifty dollars, dated the 11th day of June, 1906,

also copy of a check drawn by Charles A. Williams to Hilton J. Doggett upon the Sykesville Bank of Carroll County, for the like sum of fifty dollars, likewise dated June 11th, 1906. The copy of endorsement on the first of these checks shows payment of check. The second, as shown by copy of endorsement thereon, was protested for non-payment.

The plaintiffs objected to the question and answer and the objection being sustained the defendant excepted and this constitutes the fifth bill of exception.

6th. The witness was further asked: "Will you tell his Honor and gentlemen of the jury for what purpose did Mr. Williams state to you at the time he asked for this exchange of checks, as to what he wished to do with the proceeds of the check?"

This question was objected to by the plaintiffs and the Court sustaining the objection, the defendant excepted, and this forms the sixth bill of exceptions.

7th. He, Doggett, was further asked: "Would you have exchanged checks with him but for the fact that you had had business dealings with him?"

This question was also objected to by the plaintiffs and the objection being sustained, the defendant excepted, and this forms the seventh bill of exceptions.

We will consider the fifth, sixth and seventh bills of exception together.

The defendant in its account against the plaintiffs, filed in this case, charged them with the sum of fifty dollars alleged to have been advanced or loaned to the firm and which was never credited or returned to the defendant.

In the case of *Smith* v. *Collins,* 115 Mass. 398, the Court there held that whether the money loaned a member of a firm, is advanced upon his credit or upon the credit of the firm, of which he is a member, and whether the individual check of such person given for the loan is so far a payment thereof, as to leave the creditor no recourse to the firm, are questions of facts depending upon the intent, understanding and agreement of the parties.

The advance or loan in this case not having been made upon the application of both members of the firm, but upon the application of one only, and the amount of the loan having been paid over to such member of the firm, who gave his individual check therefor, the burden is upon the defendant company to establish the firm's liability for the payment or return of the loan.

The defendant attempting to discharge this burden propounded to the witness, Doggett, the questions embraced in the fifth, sixth and seventh exceptions, which the lower Court, upon objection, would not permit the witness to answer.

The defendant should have been allowed to show to whom the loan was made and the credit given; whether to the firm or to Williams, one of the members, and in order to have done so, he should have been permitted to prove the intention, understanding and agreement of the parties in relation to such loan. The Court below therefore erred in rejecting the evidence.

The eighth exception is upon the ruling of the lower Court in granting the plaintiffs' first and third prayers and in refusing the defendant's second prayer.

The first prayer of the plaintiffs should have been refused. The soapstone sold by the plaintiffs to the defendant was sold by sample furnished by the plaintiffs to the defendant; the soapstone to be of the grade of the sample, and in condition and quality, was to conform thereto. Notwithstanding this, however, the first prayer of the plaintiffs does not require the jury to find, before entitling the plaintiffs to recover, that the soapstone so sold was of the grade, condition and quality of the sample. The expression used in the prayer "as ordered in good condition" does not satisfy the requirements. The jury should have been told, in language not misleading, that to entitle the plaintiffs to recover the amount sought to be recovered by them, that it was necessary for the jury to find that the soapstone delivered was of the grade of the sample and in condition and quality conforming thereto. Moreover this prayer instructed the jury that their

verdict must be for the plaintiffs for the sum claimed "if the jury do not believe said bags were returned to the Eastern Mineral Company *and by it credited to the defendant corporation.*" If by agreement the defendant was to be allowed credit for the empty bags returned to the appellees, it was not necessary for the jury to find that the plaintiffs had credited the defendant with the bags returned, if any were returned, before they could allow to the defendant credit for bags so returned.

As the Court rejected all evidence as to the check of fifty dollars given by Charles A. Williams to Hilton J. Doggett, it committed no error in granting the plaintiffs' third prayer, although, as we have before said, the evidence relating to this check should have been admitted.

The Court committed no error in refusing the defendants' second prayer. This prayer wrongfully submitted to the jury for its consideration the question of the return of empty bags to the plaintiffs by the defendant. The record discloses no evidence, that we have been able to find, showing that the defendant returned any empty bags to the plaintiffs. This prayer also submits to the jury for its consideration the finding of the sum of eighty dollars, alleged to be the "difference between the selling price of twenty tons of soapstone of superior grade and the price at which the defendant was compelled to sell to the Ford Manufacturing Company such superior grade as a further inducement to said Ford Manufacturing Company to accept said three carloads of soapstone," when the only evidence offered upon this question was that offered by the defendant, and all its witnesses placed this difference at forty dollars, this instruction to say the least, was misleading to the jury.

For the errors mentioned the judgment below will be reversed.

> *Judgment reversed and new trial awarded, the appellee to pay the costs both above and below.*