## HARRY COHEN v. LEON BOGATZKY

*Evidence—Account Book—Authentication of Entries—
Refreshing Memory.*

In an action by a house painter for the price of materials used by him in painting defendant's house, an account book containing entries by plaintiff's bookkeeper as to the materials so used, based exclusively on slips which were obtained by plaintiff from the dealer who supplied the materials, but which were not verified by plaintiff in his testimony, nor authenti-

cated by testimony of any character, was inadmissible to show the sale and delivery of the materials.                    pp. 137, 138

An account book, in order to be admitted or used for any purpose, should be authenticated by testimony showing that it is a book of original entries kept for that purpose, that the entries are true and correct, and that they are reasonably contemporaneous with the transactions, and it should appear that the person making the entries had personal knowledge of the facts recorded, or his testimony should be supported by some person who did have such knowledge.                    p. 138

An account book containing entries by plaintiff's bookkeeper in regard to certain transactions was not admissible to refresh her recollection, if the entries were based exclusively on statements made to her by another, and without any independent knowledge on her part as to the transactions, there being in such case no recollection to refresh.                    p. 139

In an action by a house painter for the price of materials used by him in painting defendant's house, defendant's prayers intended as demurrers to the evidence were properly refused, there being positive testimony that some materials were delivered to the defendant and used on the building, and plaintiff being thus entitled to a judgment for at least nominal damages, even in the absence of proof of the value of the materials. p. 139

*Decided November 6th, 1925.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by Leon Bogatzky against Harry Cohen. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON. URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Daniel Ellison,* for the appellant.

*Simon Silverberg,* for the appellee.

OFFUTT, J., delivered the opinion of the court.

This appeal was taken from a judgment of the Baltimore City Court for $229 in favor of the plaintiff in an action of assumpsit on the common counts, brought by Leon Bogatzky, the appellee, against Harry Cohen, the appellant. The action was brought to recover the price of certain materials used by Bogatzky in 1922 in painting a bank building at 1394 West North Avenue in Baltimore City, at the request of Cohen. The record contains six exceptions. Five of these relate to rulings of the court on questions of evidence, and one to its rulings on the prayers. The fourth and fifth exceptions were not pressed and need not be considered.

The issue in the case was whether Bogatzky had supplied the material sued for and whether the prices charged therefor were reasonable. In support of that issue he offered six witnesses, of whom only one had any direct knowledge of what materials were actually used in painting the building.

Bogatzky himself was in bad health at the time, and did not work on the house at all, although he visited it for five or ten minutes a day while his men were at work on it. He ordered the material used in painting it from Morris Davis, a paint dealer, but apparently had no personal recollection of what he ordered or the price he paid for it, or whether what he ordered was delivered. He only knew that material which he had ordered sufficient for the work was delivered at the defendant's building, and used by his men in painting it.

Morris Davis, the paint dealer, testified that he had delivered "paint lead and other items of paint" at the building for the plaintiff, but said nothing as to the quantity or prices of what he delivered.

Louis Shapiro, who repainted the building after Bogatzky's men had stopped work on it, said that Bogatzky's men had done painting on the building, that there was nothing wrong with the work they did, and that when they stopped they could have completed the work in two or three days.

Henry Erdman knew that the plaintiff had painted the building and that the work was well done.

Benny Sacks, the foreman in charge of the work, on his direct examination testified that of his own knowledge the material "sued for in this case had been used on that job," and that he had used 700 pounds of putty on it, but on cross-examination he admitted that he did not know in detail the quantities of the different materials used on the job, except the putty, but that they had given it three coats of paint, and he further testified that when they stopped work on the building he asked Cohen "if there was anything bad with the work," and he replied, "No, nothing of the kind."

Ida Rosen, the plaintiff's daughter, acted as his bookkeeper. On her direct examination she was handed the itemized account annexed to the declaration filed in the case, and testified that she had prepared it from a book which she kept, containing apparently her father's accounts. The items in the book were made from duplicate slips which her father got from the paint store and handed to her, and which were destroyed after she had entered them. After she had given this testimony, she was asked, "What material went into that particular job?" to which the defendant objected, but the court overruled his objection and that ruling is the subject of the second, and the only substantial, objection found in the record. In answer to that question she repeated in the same words the items as set forth in the account annexed to the *nar*. It subsequently developed upon the cross-examination of the witness that many of the entries in the book were not made by her at all, although that testimony was not before the court when it ruled on the question, as the appellant failed to ask the privilege of cross-examining the witness as to the entries before the ruling. So that, as the record stood at that time, it appeared that all the entries in the book were made by the witness in her own handwriting from slips obtained from the paint dealer by her father of materials which he had ordered to be delivered on that job. But even assuming that to be true, it is not apparent

upon what theory this evidence was admitted. The slips, from which Mrs. Rosen made the entries in the book which she brought into court, were made by Mr. Davis, the paint dealer, or some one in his employ, and Mr. Bogatzky, who handed them to her, did not attempt in his testimony to verify them in any particular, nor was there any testimony of any character authenticating them, establishing their accuracy, or indicating the circumstances under which they were made, nor did it appear that Mrs. Rosen had any knowledge of the purchase and delivery of the materials referred to on them, other than what she obtained from the slips themselves. Under such circumstances, the book was not admissible as evidence to show the sale and delivery of the materials sued for, nor was it admissible to refresh the recollection of the witness who used it, for concededly she never had had any knowledge of the facts recorded in the entries, and therefore could not have had any independent recollection thereof.

The general rule in regard to the admissibility in evidence of such a book is that, before it is admitted or used for any purpose, testimony should be given authenticating it, showing it to be a book of original entries kept for that purpose, that the entries were true and correct, and reasonably contemporaneous with the transactions. *Jones on Evidence,* par. 573. And it should appear that the person making the entries had personal knowledge of the facts recorded, or his testimony should be supported by that of some person who did have such knowledge. *Ibid.*

In *Dick v. Biddle Bros.,* 105 Md. 308, the court held that entries in an account book made by the bookkeeper of the witness, as copies of original entries made by the witness, who was also the plaintiff, in another book, were not admissible as independent evidence of the charges, although the witness testified that he had compared the entries with the original book and knew of his own knowledge that they were correct. It is true that entries made by the plaintiff himself were the basis of the entries offered in evidence and for that reason alone, under such cases as *Deland Mining Company*

v. *Hanna,* 112 Md. 528; *Romer v. Jaecksch,* 39 Md. 587; *Stallings v. Gollschalk,* 77 Md. 429, were inadmissible, but the general principles stated in *Jones on Evidence, supra,* to which we have referred, are almost universally recognized and certainly are the law in this state. *Adkins v. Hastings,* 138 Md. 460.

In some cases such books may be used to refresh the recollection of a witness when they would not be admissible as independent evidence, and in *Bullock v. Hunter,* 44 Md. 416, it is pointed out that the reason for admitting them for that purpose is that, after the witness' memory had been refreshed by reference to the entries, he can swear positively as to the transaction independently of the account, and the account is used merely as a memorandum to freshen a recollection which had once existed, but which had by the lapse of time or the character of the transaction become dulled. But here the witness had no recollection to refresh and, in our judgment, she should not have been permitted to answer the question, and since her evidence related to the vital and controlling fact in the case, the sale and delivery of the material sued for, and was the only evidence as to the specific quantities and prices of the material sold, we are unable to say that the error was not injurious to the appellant, although we have reached that conclusion with considerable reluctance, because on the undisputed evidence before the court, material sufficient to paint the building was delivered by the plaintiff to the defendant and no reason is suggested on the face of the record for the defendant's failure to pay for what he actually received.

The sixth exception relates to the refusal of the defendant's first and second prayers, which were intended as demurrers to the evidence. We find no error in that ruling, as there was positive testimony that some materials were delivered to the defendant and used on his building and even if there had been no proof as to their value, the plaintiff would have been entitled to a judgment for at least nominal damages.

The rulings involved in the first and third exceptions need not be separately discussed, and it is sufficient to say in regard to them that we have been unable to discover any error.

For the reasons stated it will be necessary to reverse the judgment appealed from and remand the case for a new trial.

*Judgment reversed, case remanded, with costs to the appellant.*