## GLENROCK STATE BANK v. NATIONAL SURETY COMPANY

(No. 1747; September 13, 1932; 14 Pac. (2d) 197)

For the plaintiff and appellant there was a brief by *Dawson* and *Daniels,* of Douglas, Wyoming, and oral argument by *Mr. John D. Dawson.*

For the defendant and respondent there was a brief and oral argument by *R. R. Rose,* of Casper, Wyoming.

534

RINER, Justice.

In this proceeding the Glenrock State Bank, appellant here and plaintiff below, seeks review of a judgment of the District Court of Converse County, denying recovery on plaintiff's petition against the National Surety Company, respondent here and defendant in the trial court. Hereinafter, the parties will be referred to as designated in the

District Court, or as the "bank" and the "surety company."

The plaintiff, a banking institution incorporated under Wyoming law, brought this action against the defendant upon a contract whereby the latter agreed to reimburse plaintiff, in an amount not exceeding $2000, if plaintiff sustained loss through the "personal dishonesty, forgery, theft, larceny, embezzlement, wrongful conversion, abstraction or misapplication by Harry B. Wood," one of the plaintiff's employees, in the performance of his duties as such employee. Plaintiff's petition, after pleading this contract, alleged that Wood had embezzled, wrongfully converted, abstracted and misapplied its money and personal property in the sum of $16,500, and that due proof of such loss had been made to the surety company. The answer was a general denial.

A jury having been demanded for the trial, upon the conclusion of plaintiff's evidence the court, after sustaining defendant's motion to strike out certain documentary proofs, likewise sustained its motion that the jury be instructed to return a verdict in its favor. Upon the verdict thus rendered, the judgment aforesaid was entered. The errors assigned relate to the action of the District Court in striking out these proofs and in thus directing a verdict, it being further assigned as error that the verdict and the judgment thereon are contrary to law and the evidence in the case.

To establish its case, plaintiff relies upon its claim of misconduct on the part of the employee Wood, asserted to have been proven through the introduction in evidence of four of its journal sheets, dated respectively July 14, 15, 25 and 28, all of the year 1927, and four so-called "blotter sheets."

It is necessary at this point to relate to some extent the manner in which the bank's affairs were conducted. The record shows with reasonable clearness that on each busi-

ness day deposit slips were made containing memoranda of the deposits made in the bank on that day by the plaintiff's customers. These were kept as part of the permanent records of the bank. The accounts of all these customers, of whom there were some five or six hundred, were kept in a loose-leaf ledger, each customer being assigned a sheet, or page, therein, on which was entered each day the amount of his deposits and his checks drawn upon the account. As these sheets were filled or the account closed they were transferred to store-room space and preserved as a permanent bank record.

At the close of the day's business some one of the employees of the bank took a blank sheet of paper and listed thereon the several amounts of all of the checks and the several amounts of all the deposits that came into the bank on that day, the names of the depositors and of the makers of the checks not being given upon the sheet thus prepared. These amounts were then totaled and thereupon transferred to the journal sheet of the bank, thus reflecting, to that extent, a summary of that day's business. Customarily, the blotter sheets were dated — though it appears that some were not — and they were subsequently filed in the bank's vault or store-room and also constituted one of the permanent records of the bank. Occasionally, these sheets were initialed by the employee making them, but this was not required.

At the time of the transactions in question, the active operations of the bank were conducted by three employees, F. O. Carson, Mrs. Elsie B. Holmes, and Harry B. Wood, except in vacation seasons, when several other persons were engaged for short periods of time. Carson, as cashier, was in charge of the bank, the others working under his supervision. He looked after the loans while they attended to the work ordinarily transacted by bank tellers, and the bookkeeping. Wood was employed from

about November, 1924, until the 13th day of May, 1930. Mrs. Holmes worked there during this entire period.

The institution was subject to examination by representatives from the State Examiner's office, and the record is that on the 17th and 18th of October, 1929, an examination was made of the affairs of the bank by two of them, and its books were then found to be in balance, "except about seventy-one cents." Thereafter, and about the 13th of May, 1930, another official examination was made, which, according to the testimony of the examiners who made it, showed that the bank's books disclosed a shortage of $16,500, and also that they were at least $8000 short when the previous examination in October was made. The missing amount the examiners were unable to locate. The record is further to the effect that if, when the examination was made in October, 1929, the bank had been $8000 short, and "$8000 worth of general ledger sheets" were removed by someone before the examination was made, the bank's books would have balanced; and that Wood, when asked by one of the examining officers to explain why the books balanced in October, 1929, when the examination was made then, and did not balance in May, 1930, stated that "he supposed someone must have pulled sheets."

Recurring now to the four blotter and the four journal sheets, previously mentioned, plaintiff's claim is, and was on the trial, that because the total amounts of checks and deposits indicated on these blotter sheets failed to correspond with the totals of checks and deposits entered on the respective journal sheets for the several days on which they were made to the extent of some $800—the entries thereon being concededly in Wood's handwriting — this was proof that Wood had taken that amount of money. As invalidating this contention, the defendant claims that the evidence establishes that the blotter sheets aforesaid

were undated when, some two years after the transactions involved, they came into the hands of Carson, the cashier, who testified concerning them, and who dated them himself; that he did not know where the sheets were when he first saw them, except that they were in the bank; that there was no proof as to when they were made or who made them other than that they were made by employees of the bank, the amounts being listed by adding machine operation only and in no one's handwriting.

Relying on this asserted condition of the record, defendant, by motion, requested the trial court to strike out the four blotter sheets entire, urging in support of the motion that the witness Carson "testified and admitted that they had not been verified except as to deposits, and that as to withdrawals listed on them, they had not been verified, and that he had no knowledge of whether they were correct or not, and that they could be verified by checking the withdrawals reported on the individual ledger sheets for the days in question, and that that checking had not been done, so that there is no evidence whatever as to the correctness of these records or as to the identity of them." To this the trial court responded: "Of course your motion is too broad, these were admitted without objection, and a part of the sheet has been sufficiently identified, I take it," and overruled the motion. To this counsel for the surety company replied, "Possibly so," and immediately moved to have that part of the blotter sheets which purported to give a list of the withdrawals claimed to have been made from the bank on the days in question, struck from the record because those portions of the several sheets were not shown to be correct and their identity, as made in due course of business, not established. This motion the court sustained, and its action in that respect is assigned and argued as error, as already mentioned.

For the plaintiff, it is said that because these portions of the blotter sheets were received in evidence without objection, under the holding of this court in Henderson v. Coleman, 19 Wyo. 183, 115 Pac. 439, 449, 1136, the court was powerless to thereafter exclude them from the case. In the cited decision, however, the trial court had declined to give an instruction excluding from the case certain evidence received without objection, and it was said:

"A party who has permitted incompetent or irrelevant evidence to be received without a seasonable objection is not entitled as of right to an instruction withdrawing it from the consideration of the jury. * * * Of course, it is only necessary that the evidence be objected to when its objectionable nature first becomes apparent, as where that is disclosed for the first time upon cross-examination."

It was decided that no error had been committed. In the case at bar, it was brought out on cross-examination that no effort had been made to verify and check the blotter sheet amounts with the checks or withdrawals for their respective days. The citation does not seem to aid plaintiff. Besides, the rule appears to be, as stated in 26 R. C. L. 1056, Section 62, that while "it is not a matter of right in the party against whom it is given to have" evidence unobjected to, excluded on motion, still "its exclusion is in the discretion of the court." See also 38 Cyc. 1407.

In Lewis v. England, 14 Wyo. 128, 82 Pac. 869, 871, 2 L. R. A. (N. S.) 401, it is said:

"Certain essential requirements, however, must be observed in order to justify the reception of books of account as evidence. It must appear that they were the regular method of keeping accounts adopted by the party, containing the regular entries of his transactions in the usual course of business, and made so near the time of the transactions as to establish the presumption that they were fairly and honestly kept."

In Cohen v. Bogatzky, 149 Md. 134, 131 Atl. 31, 33, speaking of the admissibility in evidence of an account book, the court said:

"The general rule in regard to the admissibility in evidence of such a book is that, before it is admitted or used for any purpose, testimony should be given authenticating, showing it to be a book of original entries kept for that purpose, that the entries were true and correct and reasonably contemporaneous with the transactions. Jones on Evidence, par. 573. And it should appear that the person making the entries had personal knowledge of the facts recorded, or his testimony should be supported by that of some person who did have such knowledge. * * * The general principles stated in Jones on Evidence, supra, to which we have referred, are almost universally recognized and certainly are the law in this state."

In Carter v. Vine Grove State Bank, 236 Ky. 191, 32 S. W. (2d) 973, 974, discussing the same subject, the court remarked that:

"The most serious question in this case is the competency of the books of the bank which were introduced for the purpose of showing that the proceeds of the note were placed to the credit of the warehouse company. The books of the bank were kept by an assistant cashier, and she was not introduced and there appears no reason in the record for the failure to introduce her. The contents of such books must be first properly proven before they are competent evidence of the facts shown by them. The person who made the entries must be offered as a witness and the entries proven by him unless he is dead, or has absconded, or unless other sufficient reasons exist showing that it is not practical to obtain his testimony. Such books are never competent evidence of their contents until the absence of the person who made the entries is satisfactorily accounted for on one or more of the grounds above stated. Baskett, Nichols & Norment v. Rudy, 186 Ky. 208, 217 S. W. 112."

See also Radke v. Taylor, 105 Or. 559, 210 Pac. 863, 27 A. L. R. 1423, and note 1439; Shields v. Rancho Buena Ventura, 187 Cal. 569, 203 Pac. 114.

The cashier Carson testified that by taking the listed amounts of withdrawals on the blotter sheets and checking them against the entries made on that day on the individual ledger sheets as to checks there enumerated, the accuracy of the listed amounts could be verified if he had all the individual ledger sheets; that he should have these; that he did not know whether he had them or not; and that he did not know whether he had looked for them or not. In the light of the authorities cited, and the circumstances here shown, we think that this checking should have been done. So far as appears, employees were available who could testify as to the accuracy of the individual ledger sheets, but no effort apparently was made to secure this proof. The cashier testified to checking the original deposit slips with the amounts listed on the blotter sheets of July 14, and July 28, 1927, respectively, thus verifying and identifying those items, as counsel for defendant seems to concede. We are unable to see that any error was committed by the court in sustaining defendant's second motion to strike, described above, as the proof then stood.

Did the court err in directing a verdict for the defendant? In approaching this question, we must have constantly in mind the rule announced in Collins v. Anderson, 37 Wyo. 275, 260 Pac. 1089, 1090, to the effect that: ·

"In considering whether the trial court was justified in taking the case from the jury we must accept as true the evidence in favor of the plaintiff together with such inferences as might reasonably be drawn therefrom, and then determine whether such evidence and such inferences would support a verdict in the plaintiff's favor if such a one were returned by the jury."

542

Under the trial court's ruling as above described, that part of the blotter sheet dated July 28, 1927, which listed the deposits in the bank for that day, was left in the record and shows total deposits of $4821.28. Comparing this amount with the item of total deposits appearing on the bank's journal sheet for the date aforesaid, it appears that they do not correspond, as they unquestionably should. The amount given on the journal sheet, instead of being $4821.28, is $4521.28. This last entry shows the deposits to have been exactly $300 less than they actually were. Testimony was admitted without objection that this entry on the journal sheet was in the handwriting of Harry B. Wood. A close examination of the figure "5" on the journal sheet would appear to show that an erasure of another figure has been made and the figure "5" written over it. Thus the evidence now in the record establishes that an untrue entry was made by Harry B. Wood on the books of the bank, and the fair inference that may be drawn therefrom is that he pursued this method to cover up a misapplication of the bank's funds. As already pointed out, the blotter sheets and the original deposit slips were customarily filed in the bank's vaults or storeroom after they were made, and hence unlikely to be consulted so as to bring the matter to light.

The bank possessed a book designated as "Daily Cash Statement," wherein was entered a list of the cash that was in the bank on the noted date. The list furnishes the items of gold, currency, silver dollars, half-dollars, quarters, dimes, nickels and pennies, both in the bank's safe and "in Till." In addition to these items at the foot of each listed column, there were also given what are designated "cash items." The lists of July 14, July 15, July 25, and July 28, all of the year 1927, from this book, were offered in evidence and received without objection. The undisputed testimony was that these lists and their footings were all in the handwriting of Harry B. Wood. An

inspection of them discloses the following: The list of items for July 14, 1927, when added, totals $6351.54. The entry at the foot of the list made by Wood shows a total of only $6251.54, a variance of exactly one hundred dollars against the bank. This list contains a cash item of $1117.99. The second digit from the left of the figures last given shows distinct evidence of alteration. Evidences of alteration also appear on the book aforesaid with reference to the "2" in the total footing made of this list of items. Turning to the journal sheet of the bank of the date aforesaid, also concededly in the handwriting of Wood, the amount of the entry of "cash on hand" for that day appears as $6251.54. The "2" in the hundreds column of those figures appears to have been written over an erasure of another figure.

The list of items for July 15, 1927, in fact, totals $5786.70. Wood's footing of the items is only $5686.70, a variance again of one hundred dollars against the bank. The items of this list show no alterations, but the figure "6" in the hundreds column of the footing obviously has been written over an erasure of another figure. The bank's journal sheet for the date last mentioned shows an entry in Wood's handwriting of $5686.70, as constituting the "cash on hand" on that day. The "6" of this entry presents the same peculiarity as that noted in the total footing on the cash statement book.

An examination of the items in the list for July 25 shows no apparent alteration of them. They actually total $6305.49. However, Wood's footing of these items shows a total of only $6105.49, a variance of $200 against the bank. The figure "1" in the hundreds column of Wood's footing figures plainly has been written over an erasure of another figure. Wood entered on the bank's journal sheet for this date, as "cash on hand," the amount of $6105.49. Here again the figure "1" in this amount shows as having been written over an erasure.

The items for July 28 actually total as the footing in Wood's handwriting indicates. But the item of $1133 of currency "in Till" shows that the figure "1" in the hundreds column has been written over an erasure of what appears to have been a "5", and the figure "2" in the footing has the appearance of having been written over another figure previously erased. Wood's handwriting on the bank's journal sheet for this date as "cash on hand" is $6269.90. The figure "2" in this entry has been written over an erasure.

Thus the daily cash statement lists introduced in evidence show altered items and untrue footings — all the work of Harry B. Wood. This condition of affairs, plus the untrue entry of the amount of the deposits by Wood on the journal sheet for July 28, 1927, in our judgment, certainly calls for an explanation.

In State v. Reinhart, 26 Or. 466, 38 Pac. 822, 826, involving an embezzlement charge under the criminal law, the court, speaking of the effect of evidence of this kind in cases of that character, said:

"But false entries made by an employe in the books of his employer, when unexplained, have always been considered the strongest evidence in such cases. 'The proof commonly relied upon and held sufficient,' says Mr. Bishop, 'is either that the servant has wilfully made in his books false entries, or else that he has denied or wilfully omitted to acknowledge the receipt of the embezzled article or fund.' 2 Bish. Cr. Law (7th Ed.) § 376. Indeed, in a majority of the cases no other evidence is possible or can be obtained."

See also State v. Bay, 148 La. 559, 87 So. 294; Jackson v. State, 76 Ga. 551.

We do not overlook, in this connection, the unbusinesslike manner in which some of the affairs of the bank were conducted—pencil figures instead of ink being used for

permanent bank records, loose-leaf record sheets missing from the bank's files, blotter sheets undated and with no initialling marks or signatures thereon to indicate readily who made them—and that changes were made on the journal sheets to make corrections. Here the changes made were, so far as this record shows, not in accordance with the facts, and they are so numerous as fairly to raise the inference that they offered evidence of a deliberate course of conduct, and that conduct wrongful in character.

In fairness to the judge who tried this case, it is proper to add that it is far from clear that these matters were fully and timely drawn to his attention. But they appear in the record before us, are necessarily involved in the due determination of the assignments of error made herein, and we cannot ignore them. Our conclusion, after a painstaking study of the record, is that the judgment entered upon the directed verdict should be reversed and the case remanded for a new trial.

*Reversed.*

BLUME, J., concurs and KIMBALL, C. J., concurs in the result.

KIMBALL, C. J.

I concur in the result, but desire to express a doubt as to the correctness of the ruling striking from the evidence the lists and totals of checks on the so-called blotter sheets described in the above opinion.

The blotter sheets for four days in July, 1927, were identified by showing that the deposit items there listed corresponded with the deposit slips of the same days. The listed checks had not been compared with the other bank records, but it can hardly be contended that that was necessary on the mere question of identification of the blotter sheets.

It may be conceded that, as the evidence failed to show that the blotter sheets were made by Wood, they were not evidence of an admission by him. Also, that, as the lists of checks on the blotter sheets had not been compared with the checks themselves nor with the entries in the books of customers' accounts, the parts of the blotter sheets listing and totalling the checks were not competent evidence of the amounts of the withdrawals on those days. It seems to me, however, that the whole of the four blotter sheets may have been admissible in connection with the journal sheets for the purpose of showing false or irregular entries by Wood. The blotter sheets were made by some one in the bank in the regular course of business. They were work sheets—evidence of the process by which the totals of deposits and withdrawals were ascertained. The totals as shown by the figures on the blotter sheets were, in the regular course of business, carried to the journal sheets which were a permanent record. There was evidence that Wood made the permanent record, but instead of entering the totals shown by the blotter sheets, entered more withdrawals and less deposits. This, unless explained, would seem to tend to show that he made false entries in the journal sheets for the purpose of concealing a shortage in the bank's cash.

I concur in the views expressed on other matters discussed in the opinion of the court.