## ROSSON v. HYLTON, ET AL.

(No. 1789; May 25, 1933; 22 Pac. (2d) 195)

For the plaintiff in error, there was a brief and oral argument by *Mr. R. R. Rose,* of Casper, Wyoming.

For plaintiff in error, J. R. Hylton, there was a brief by *Durham & Bacheller* and oral argument by *Mr. Bacheller*, of Casper, Wyoming. There was no appearance for the defendant in error, G. W. Earle.

RINER, Justice.

This proceeding in error was brought to obtain the review of a judgment of the District Court of Niobrara County rendered in an action wherein Ernest Rosson, the

plaintiff in error here, was plaintiff, and J. R. Hylton and G. W. Earle, defendants in error, were defendants. There was a jury trial and, upon the conclusion of plaintiff's evidence, pursuant to defendants' separate motions made for that purpose, the court directed the jury to return a verdict in their favor. The judgment entered upon that verdict is the one concerning which complaint is now made. The controlling question to be determined, therefore, is whether the district court's action in the matter was correct.

Plaintiff's amended petition was based upon the alleged negligence of the defendants, who are each duly licensed physicians and surgeons under the laws of this state, in performing a surgical operation for hernia for which purpose they had been employed by him. He had been afflicted with this ailment for some two or three years prior to the operation which took place on October 5, 1926. The particular act of negligence charged was that the surgeons "left and permitted to remain inside plaintiff's abdomen a large piece of towel or surgical gauze" and "closed the incision made by them in the course of said operation leaving the said foreign substance inside plaintiff's abdomen where said foreign substance remained until about five days subsequent to said operation." The pleading then alleged that:

"That because of the presence in plaintiff's abdomen of said foreign substance infection began to develop soon after said operation and plaintiff became very ill and by reason of defendant's negligence as hereinbefore set out plaintiff was confined to the said hospital for a long period of time, and for a period of more than two years continued to be ill, weak, distressed, sick, lame and sore and unable to work or attend to his business."

Other than admitting their authority as regularly licensed physicians, the answers of the defendants were general denials.

The facts additional to those already mentioned as disclosed by the record and necessary to be considered in reaching a proper disposition of the question before us are briefly these: On October 5, 1926, aforesaid, Rosson entered the Lusk hospital for the purpose of having the operation performed. This institution was in charge of Mrs. Emma Marsh who was not a registered nurse but practiced as a trained nurse, having been in sole charge of the hospital for some eight years preceding the date last mentioned. The accommodations of the hospital were limited to ten patients. Mrs. Marsh looked after the patients herself with occasional help. She was called as a witness for the plaintiff and testified that, under Dr. Earle's direction, she prepared Rosson for the operation; that she had no floor nurse that day and that, after preparing the operating room and the patient, she was not present during the performance of the operation, did not observe anything, and knew nothing about it; that she made a daily record of the condition of the patient, treatments and medicines used, temperature, and other symptoms, this record being all the time available to the physician in attendance who, in this case, after the operation had been concluded, was Dr. Earle; that at the close of the operation, the wound was closed and dressed and the dressing remained on the wound until October 15, 1926, when she removed it in Dr. Earle's presence; that there was stitch pus and the dressing was soiled from its drainage. The daily record aforesaid received in evidence as regards Dr. Earle, shows among its notations for that day, "stitch abscess." Continuing Mrs. Marsh's testimony, she stated that when the bandages were removed the wound was still closed and nothing was protruding from the wound; that she saw no rubber tubing, gauze, or drainage of any kind in the wound when the dressing was removed on October 15; that on the following day, the stitches had sloughed and the wound was open; that the wound continued to have pus drainage, was irrigated and

dressed on each of the subsequent days until October 22, 1926; that on that day, a retained sponge was removed.

Describing this occurrence, she testified that, Dr. Earle being present, she observed something foreign within the opening of the wound which looked like cloth, not like a sponge, and she took a hemostat and pulled it out; that the removed soiled dressings were put on a paper and ''then we removed this sponge and put it with these dressings and Dr. Earle went out of the room once and I followed him out''; that he said, ''my God, don't say anything about it''; that, referring to the article removed, ''we opened it up and it was a towel''; that it looked like a barber towel about 12 by 24, such a towel as she had in the hospital put up in packs for operations; that these towels are used in an operation to prepare a screen of them, bind and put it lengthwise and crosswise, and that is a wrap sheet; that she thereafter destroyed the towel removed from the wound. The notation made on October 22 in her handwriting on the daily record above mentioned relative to the foreign substance thus removed is: ''retained sponge removed.''

Mrs. Marsh also stated, on cross-examination, that, while she had occasion daily of observing the incision after removal of the bandage, she did not know how wide or how long or how deep the incision was; that she furnished everything for the doctors to use in the operation in this case including sponges and dressings, except the instruments employed, and they supplied those; that she had an electric sterilizer for instruments in the operating room in October, 1926. Answering a question relative to dressings for the operation—''And you had a sterilizer in the basement where you sterilized them all up to where you wanted to use them?'' she stated ''these were flat on a table base, piece of cloth, and after in this steamer sterilizer then taken upstairs with the wrappers on.'' She also testified additionally on this matter that she knew that the dressings were sterile ''because we tested them'';

that it is a fact that the dressings were sterile. Some of her statements as reported in the record, as may be noticed from what is set out above, are not very clear.

The patient's daily record from October 22nd, 1926, was described in detail by Mrs. Marsh, showing pus drainage, pain, and abdominal temperatures until November 4th when an abscess of the scrotum appeared which was incised by Dr. Earle and the pus from the upper wound went down through and out the lower incision. Swelling of the limbs followed these symptoms. The wound first began to close on November 28th, the patient leaving the hospital on December 13th, and permanently a few days later.

Dr. Hylton, one of the defendants called for cross-examination under the statute, testified that he performed this operation and, in a large percentage of cases, it is bad practice for an operating surgeon to leave any piece of foreign substance such as a piece of towel within the wound; that a foreign substance such as a towel left in a wound for ten days would not cause pus, assuming whatever was enclosed to be absolutely sterile. On redirect examination, this witness stated that no towel was left in the incision, but that gauze drainage was left in the wound as necessary on account of fear of pus in the case and that this was good practice in this instance.

Dr. Earle, the other defendant, also called by the plaintiff for cross-examination under the statute, said that he was present throughout the operation and assisted in closing the wound; that the leaving of a sterilized towel in the wound would not cause infection; that a patient about the size of the plaintiff, if otherwise in good health, and operated on for direct and indirect hernia, and assuming that no towel was left in the abdomen, that there were no complications, and the case was in a hospital properly conducted, other things being equal, he would get out in thirty days.

Other than the testimony given by the defendants, there was no other medical testimony taken. The defendants separately moved for a directed verdict upon several grounds, among which were:

"That there is no sufficient evidence to submit to the jury that if a sponge, piece of gauze or towel was left in the body of the plaintiff, following the operation performed on him, by the defendant Doctor Hylton (Doctor Earle), that the leaving of the sponge, piece of gauze or towel was the result of the negligence on the part of the defendant Hylton (Earle).

"That there is no sufficient evidence to submit to the jury that if the plaintiff suffered any pain or suffering or any disability whatever for any period of time following the operation, performed upon him by the defendant Hylton (Earle), that such disability, pain and or suffering was approximately caused or resulted from any alleged negligent act of the said defendant."

Under the rule adopted by this court (Calkins v. Wyoming Coal Mining Co., 25 Wyo. 409, 171 Pac. 265, 267; Collins v. Anderson, 37 Wyo. 275, 260 Pac. 1089; Hester v. Coliseum Motor Co., 41 Wyo. 345, 285 Pac. 781; Glenrock State Bank v. National Surety Co., 44 Wyo. 532, 14 Pac. (2d) 197) in determining whether the trial court properly sustained a motion for a directed verdict, we must accept as true the evidence of the plaintiff with the reasonable inferences that may be made therefrom. Where this fails to establish in law a claim or defense, it is "not only the right but the duty of the court to so instruct the jury." Calkins v. Wyoming Coal Mining Co., supra.

In Wright v. Conway, 34 Wyo. 1, 241 Pac. 369, 373, 242 Pac. 1107, an action for alleged malpractice of the defendant when employed as a physician and surgeon to attend the plaintiff for a fractured leg, discussing the rules covering the civil liability of physicians and surgeons, this court quoted the language of Judge Taft, sitting as a

United States Circuit Judge (Ewing v. Goode, (C. C.) 78 F. 442), to the following effect:

"Before the plaintiff can recover, she must show by affirmative evidence—first, that defendant was unskillful or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury."

Authorities are also cited stating that "where the evidence is as consistent with the absence as with the existence of negligence, the case should not be left to the jury." And also that "the authorities are practically uniform in holding that as to what is or is not proper practice in examination and treatment, or the usual practice and treatment, is a question for experts, and can be established only by their testimony." In elaboration of the rule, it is further declared in the opinion:

"So the negligence must appear from expert testimony, and that it caused the condition complained of, unless relating to a matter of common knowledge. Markart v. Zeimer, 67 Cal. App. 363, 227 Pac. 683; Lorenz v. Lerche, 157 Minn. 437, 196 N. W. 564; Pettigrew v. Lewis, 46 Kan. 78, 26 Pac. 458; Loudon v. Scott, 58 Mont. 645, 194 Pac. 488, 12 A. L. R. 187; Perkins v. Trueblood, 180 Cal. 437, 181 Pac. 642. And 'neither of these conditions,' failure to possess or use ordinary skill, or that the result complained of was brought about thereby, 'should be supported merely by theory, conjecture, or inference, but they should be based upon tangible, substantial evidence, which the court and jury may grasp and understand.' Kernodle v. Elder, 23 Okl. 743, 102 Pac. 138."

Holding, in that case, that the burden of proof was not sufficiently sustained by the plaintiff to take the case to the jury upon the question of proximate cause, the principle was invoked:

"By reference to the general rules and the adjudicated cases, the burden of proof was upon the plaintiff to show not only the alleged negligence but also that it was the proximate cause of the ultimate condition upon which the claim of damage is based."

In the case at bar, the claim is that infection resulted from the alleged failure of the defendants to remove a towel or surgical gauze from the wound made in plaintiff's abdomen in the course of performance by them of the operation for which they were employed. This infection, it is charged, caused the damage for which plaintiff seeks recovery. Necessarily, under the authorities cited above, the burden rested upon plaintiff to prove that a towel or surgical gauze was negligently left in the wound by the operating surgeons. The testimony of Mrs. Marsh is relied on to establish this fact. At the risk of repetition, we again refer to her testimony. She was not present at the operation and did not know what was done then. She states that when the dressings were removed from the wound on October 15, 1926, it was closed and she saw nothing used for drainage protruding from it. The wound having opened on October 16th, some six days later, the 22nd, and while Dr. Earle was present, she observed something in it which she removed with a hemostat. The article taken out, the witness says, was a towel 12 by 24 such as she had in the hospital for use in operations. Nevertheless, on the medical record which she testifies is in her own handwriting and was made by her at the time, she notes simply, "retained sponge removed"—nothing whatever being set down about a towel, the latter possessing, as she also states, not the same mesh as the surgical sponges used which were of gauze and finer than cheesecloth.

Dr. Hylton, who performed the operation, denied that any towel was left in the incision, but says that necessary gauze drainage was left in it as he and Dr. Earle feared

pus and that this was good practice in this case. He had previously testified that to leave any foreign substance in the wound was bad practice "in a large percentage of cases." It would seem that Mrs. Marsh's coincident memorandum of what occurred is rather in harmony with Dr. Hylton's testimony just described for he says, in substance, that necessary gauze drainage was put in, and in effect her note says a retained gauze sponge, was taken out of the wound. As the evidence in the case stood, if Dr. Hylton's statements relative to the gauze be regarded as true, then there was no proof of negligence in leaving the foreign substance in the wound. Mrs. Marsh's oral testimony would seem to be in conflict with the statement in her memorandum. The jury would have been obliged to guess whether a towel or a sponge was removed from the wound. Only by disregarding the written memorandum and by giving such oral testimony its full value in conjunction with Dr. Hylton's qualified statement as to what constituted bad practice in most instances, could it be regarded as sufficient on the point for submission to the jury. In this state of the record and in view of the rule quoted above that "where the evidence is as consistent with the absence as with the existence of negligence, the case should not be left to the jury," we are inclined to view it as at least doubtful whether, all things considered, the burden of proof was sustained in this respect.

However this may be, there remains the question of whether the plaintiff upheld the burden of proving the proximate causal connection between the alleged negligence and the damage suffered. The testimony of both Dr. Earle and Dr. Hylton stands undisputed in the record that a sterile towel left in the wound would not cause infection—the disturbing factor admittedly the source of the patient's delayed recovery and most of the other ill effects following the operation.

It is contended by plaintiff in error that there was no proof that this towel—assuming that the article removed

was a towel—was sterile. With this contention we are not inclined to agree. Under the rule governing the direction of verdicts hereinbefore given, deducing such inferences from Mrs. Marsh's testimony as may reasonably be drawn, we think it was fairly established that the towel in question was sterile. Without contradiction, she stated that hand towels were not used and the towel removed from the wound was one such as is put up in the hospital in packs for operations; that these towels were employed as a screen, bound and put lengthwise and crosswise (evidently about the operative area) and that it was a fact that all dressings used in the operation were sterile. It would hardly seem reasonable to conclude, in view of her testimony as to the careful sterilization of all dressings used in connection with the operation, that the towels employed in it were not sterilized, but that only the sponges furnished by her were so.

Concerning this towel, plaintiff in error says:

"As to where it came from, whether it was used in connection with this particular operation, whether it had been sterilized at the time of the operation or at any other time, and whether it was kept in an air tight recepticle, or how it was kept, the record is absolutely silent."

But the rule is that "in the absence of evidence on the subject, it will be presumed that a physician or surgeon discharged his full duty to the patient including the exercise of reasonable care and skill in his treatment." 48 C. J. 1142; 21 R. C. L. 406, § 49. While there was evidence that there was an instrument sterilizer in the operating room, still there was no proof made by plaintiff as to whether the instruments used by the surgeons in opening and working with the wound were or were not sterile. The argument above suggested by the plaintiff in error would seem to lead logically to the conclusion that these instruments also must be regarded as sources of infection.

But such a claim is not made and could not properly be made on this record.

In Nevinger v. Haun, 197 Mo. App. 416, 196 S. W. 39, 40, an action against a dentist for an infection of plaintiff's gum alleged to have been caused by instruments used by defendant in attempting to extract a tooth, upholding the defendant's contention that plaintiff failed to make out a case for the jury and that the trial court consequently erred in overruling a demurrer to the evidence, it was said:

"To entitle plaintiff to recover, on the theory upon which the case proceeds, it devolved upon him to adduce substantial evidence tending to show negligence on defendant's part with respect to sterilizing the instrument or instruments which he used upon plaintiff, and that as a direct and proximate cause of such negligence plaintiff's gum was infected, whereby he was injured and damaged."

The proof in the case at bar was that sterilized cloths in the wound would not cause infection. In view of that proof and the other elements in the case, it therefore devolved upon plaintiff, in order to carry the matter to the jury, to produce evidence that the towel was unsterile. This was not done. Indeed, as we think, the evidence reasonably interpreted was to the contrary.

We are unable to discover any prejudicial error in the record and the judgment of the District Court is affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.